[Civ. No. 5215.  First Appellate District, Division One.—April 23. 1926.]

GOLDBERG, BOWEN & CO. (a Corporation), Respondent, v. J. K. DEMICK et al., Defendants; SECURITY TRUST CO. (a Corporation) et al., Appellants.

[1] FRAUDULENT CONVEYANCES — DEBTOR AND CREDITOR — PARTIES CLAIMING THROUGH JUDGMENT DEBTOR—STATUTE OF LIMITATIONS. In an action by a judgment creditor to set aside certain conveyances of real property claimed to have been made by the judgment debtor for the purpose of defrauding his creditors, parties claiming through the grantee of said fraudulent conveyances cannot raise the question of limitations, after being joined as parties to plaintiff's action, where they were not parties to the original action, nor related, by privity or otherwise, to the grantor, who owed them nothing.

[2] ID. — STATUTE OF LIMITATIONS — PERSONAL NATURE OF PLEA — WAIVER.—The statutes of limitations is a plea personal to the debtor, who may use or waive it as he pleases.

[3] ID. — INTEREST ACQUIRED BY GRANTEE — RIGHTS OF CREDITORS OF GRANTOR.—The grantee of a conveyance in fraud of creditors takes whatever interest the grantor has in the property, limited or qualified only by the interest of the creditors of the grantor, the conveyance as to them being fraudulent, and the grantee ordinarily is entitled to any surplus after the claims of creditors are satisfied.

[4] ID.—CREDITORS OF GRANTEE—ACTION BY CREDITORS OF GRANTOR— JUDGMENTS—EXECUTIONS—STATUTE OF LIMITATIONS.—The creditors of a grantee under a fraudulent conveyance may reach his interest by execution, and if he fails to plead the statute of limitations may do so for him in an action by the grantor's defrauded creditor to subject the property to their judgment against the grantor.

[5] ID.—INTEREST OF GRANTEE'S CREDITORS—STATUTE OF LIMITATIONS —ESTOPPEL.—In such action, where the grantee conveyed the interest acquired by him under the fraudulent conveyance and the grantor had secured it by reason of his ownership of a corporation which succeeded to it, the grantee's creditors had no interest and could not plead the statute of limitations for him.

[6] ID. — RECONVEYANCE BY GRANTEE — TITLE — TRUSTS — RIGHTS OF DEBTOR.—In such action, where the grantee, after conveying his interest in the property, acquired the record title as statutory trustee by virtue of being a director of a defunct corporation, formed to take over the grantor's property, and failed to perform assessment work on mining claims for the purpose of allowing forfeiture, after which he relocated them, with aid of funds advanced by grantor for assessment work, in the name of one who subsequently conveyed them to him, he was a mere trustee for the grantor, and his creditor, having full knowledge of claim of grantor's creditor, could not subject the property to the grantee's debts.

[7] EXECUTION SALES—PURCHASERS—TITLE—TRUSTS.—Purchasers at an execution sale under a judgment against a debtor holding the record title as mere trustee take no title, as purchasers at such sales take only the title the debtor has.

---

(1) 37 C. J., p. 708, n. 64, p. 721, n. 16.    (2) 37 C. J., p. 707, n. 62. (3) 27 C. J., p. 665, n. 32, 33, p. 666, n. 35, 36.    (4) 27 C. J., p. 665, n. 28; 37 C. J., p. 708, n. 68.    (5) 37 C. J., p. 708, n. 64.    (6) 39 Cyc., p. 172, n. 32, p. 176, n. 38.    (7) 23 C. J., p. 746, n. 15, p. 747, n. 16.

2.   See 16 Cal. Jur. 412; 17 R. C. L. 669.
3.   See 12 Cal. Jur. 1022; 12 R. C. L. 597.
7.   See 16 R. C. L. 138.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. W. Wiley for Appellants.

Mervyn R. Dowd for Respondent.

TYLER, P. J.—This action is one brought to set aside certain conveyances of real property claimed to have been made for the purpose of defrauding creditors. It is in the nature of a creditors' bill in equity.

The record is involved and voluminous and contains many facts which do not affect the questions here presented. We will therefore confine ourselves to a recital of such facts only as are necessary to discuss the points relied upon for a reversal.

On November 1, 1907, defendants Demick and Blood executed certain promissory notes to plaintiff Goldberg, Bowen & Co., a corporation. These notes were subsequently merged in a judgment rendered in the superior court of the city and county of San Francisco on December 22, 1911, which was for the sum of $3,094.08 and costs. An appeal was taken therefrom, but the judgment was affirmed February 8, 1915, and a *remittitur* was issued to the court below thirty days thereafter. For some unexplained reason, but probably for failure to pay the fee, the *remittitur* was not filed by the clerk until September 16, 1919. On March 6, 1919, less than five years after the affirmance of the judgment, an execution was issued out of the superior court which was subsequently returned wholly unsatisfied. On November 8, 1919, an *alias* execution was issued to the sheriff of Kern County, but no return was ever made thereon. Thereafter, on November, 1919, supplementary proceedings were had under section 715, of the Code of Civil Procedure, at which time defendant H. H. Blood was examined, but the hearing failed to disclose the ownership of any property in him, and the order of examination was discharged. The examination did reveal, however, that he had disposed of his property through mesne conveyances to a corporation known as the Sterling Develop-

ment Company. Blood was the president of this corporation and owned all of its stock. Plaintiff thereupon on the twenty-eighth day of March, 1921, commenced this action against such corporation and the other defendants, among whom was C. C. Little and his wife, to obtain a decree establishing and determining that certain mining claims the property here involved held by them belonged to defendant Blood and had fraudulently been conveyed by him to Little and by mesne conveyances to the corporation to defeat plaintiff's judgment. A *lis pendens* was recorded against the mining property. After the filing of this complaint and on June 8, 1921, another corporation known as the Security Trust Company, a defendant herein, recovered a judgment against Little for the sum of $3,462, and on the sixth day of December following it sold the mining claims to defendant Lee Rankin. On March 30, 1922, plaintiff herein filed an amended complaint joining appellants and the mining claims sold by the sheriff to defendant Lee Rankin as parties to the action.

The prayer of the amended complaint was that the conveyance by Blood to Little be declared fraudulent and that Rankin be decreed to have no interest against the plaintiff or defendant Blood by reason of any certificate of sale or deed which defendant Rankin may have acquired at the sheriff's sale and that Blood be decreed to be the owner of the property and entitled to the possession; that Rankin be required to surrender such possession unto defendant Blood.

To this complaint the appellants filed a general denial. They also set up the defense that the cause of action against them, if any, was barred by the statute of limitations. The other defendants, including Blood and Little, defaulted. The trial court found, in substance, that the Littles were relatives of Blood and his confidantes in all of his business transactions. That shortly after the time of the commencement of the original action the Sterling Development Company, a corporation, was formed with Blood as its president, for the purpose of holding all the assets of Blood; that all of the stock in the corporation was owned by him; that prior to the formation of the corporation and after the commencement by plaintiff of their original action Blood had conveyed the mining property

to C. C. Little; that Little conveyed the same to Blood's attorney, who, in turn, conveyed to the Sterling Development Company; that this corporation forfeited its charter for failure to pay its franchise and license taxes; that the property of the corporation was thereafter held by Blood, Little, and others as trustees; that the transfer by Blood to the corporation of his assets was made without consideration and for the specific purpose of defrauding plaintiffs. It further found that after the corporation mentioned had forfeited its charter, Blood sent to C. C. Little the sum of $1,700 to be utilized by him in performing assessment work on the mining claims; that Little failed to perform the work and that his purpose in so doing was to allow the claims to be forfeited so that the same could be relocated; that Little induced defendant Raney, who was his uncle, to relocate the claims, which he did, and subsequently delivered to Little a quitclaim deed to the same. Under these circumstances the court found that Little held the property as trustee of the defunct Sterling Development Company, in trust for the creditors of Blood. Other findings are to the effect that the claims of Rankin and the judgment of the Security Trust Company arose subsequent to the filing of plaintiff's complaint. In conformity with these findings it was ordered that the conveyance by Blood to Little, made to defraud his creditors, be canceled and it was also ordered that the conveyances made under the execution sale to Lee Rankin be likewise canceled. From the judgment quieting the title of Blood in the mining claims, the appellants Security Trust Company, Lee Rankin, W. A. Rankin, and the sheriff, D. B. Newell, who made the sale, have appealed. No appeal has been taken by Blood or any of the other defendants, they having defaulted.

The point relied upon for a reversal of the judgment is that the executions issued out of the superior court of San Francisco, in the original judgment, were void and had no force or validity for the reason that they were issued after the expiration of five years from the docketing of such judgment. In support of this claim it is argued that since the execution of the judgment had not been stayed pending appeal, and since more than five years had elapsed from its docketing, it could only be carried in force by leave of the court upon motion made under the provisions

of section 685 of the Code of Civil Procedure, and no such motion having been made, the judgment obtained by plaintiff against Blood and Demick had no force or validity at the time of the commencement of this action.

[1] We do not think that we are at all here concerned with any question relating to the statute of limitations for we are of the opinion that appellants are in no position to raise any such question. They were not parties to the original action, nor were they in any manner concerned therewith. Blood was never indebted to any of the appellants. The judgment obtained by the Security Trust Company was against Little. [2] The statute of limitations is a plea personal to the debtor which he may use or waive as he pleases. It is true that where some privity exists between parties a different question may be presented. But the facts here involved, as we understand them, present no such question. The action was one against Blood by his creditor to subject certain property fraudulently conveyed by him to the satisfaction of a judgment secured by such creditor against Blood. Appellants herein are in no manner related to Blood by privity nor in any manner whatsoever, as he at no time owed them anything. Blood failed to plead the statute of limitations against this action, but he was under no legal obligation to do so on behalf of appellants, for he owed them nothing. This being so, appellants who claim through Little are in no manner concerned with any plea that Blood may or may not have made. It is none of their affair so far as he is concerned. The only manner in which they might be affected is through their relation to Little. [3] As a grantee under the fraudulent conveyance, Little took whatever interest Blood had in the property as the conveyance to him was perfectly valid. (*Huellmantel* v. *Huellmantel*, 117 Cal. 407 [49 Pac. 574].) The interest that he acquired was limited or qualified only by the interest of the creditors of Blood, the conveyance as to them being fraudulent. As to them only, his interest was subordinate. If, after their claims were satisfied, there remained any surplus, Little would ordinarily be entitled to that surplus. (*Loosemore* v. *Baker*, 175 Cal. 420 [166 Pac. 26]; *Estate of Vance*, 141 Cal. 624 [75 Pac. 323].) [4] And this interest was one that his creditors might reach by execution, for as to this in-

terest they might be said to stand in his shoes by relation or privity, and if he failed to plead the statute, they might do so for him. (*Brown* v. *Campbell,* 100 Cal. 635 [38 Am. St. Rep. 314, 35 Pac. 433].)

[5] But at the time this action was brought Little had some ten years previously, as above recited, conveyed whatever interest he may have acquired under the fraudulent conveyance, and defendant Blood had secured the same by reason of his ownership of the Sterling Development Company which succeeded to the interest. At the time this action was commenced, Little owned no interest whatsoever. The interest which he acquired under the fraudulent conveyance had passed out of his hands and no question is here raised concerning the validity of Little's transfer. So far, therefore, as this interest was concerned, Little having none at the time of this suit, his creditors had none by relation to him and they could not interpose the statute in his behalf. Having none against Blood, they could not therefore plead the statute on behalf of anyone. [6] At the time of the commencement of this action, however, the property stood in the name of Little. This record title was acquired by him in the following manner: Little was chosen by Blood as one of the directors of the Sterling Development Company which was formed to take over the title to all of Blood's property. That company failed to pay its license and franchise tax and in consequence became a defunct corporation resulting in Little acquiring an interest in its property as one of the statutory trustees to wind up its affairs. Thereafter, in December, 1916, Blood sent the sum of $1,700 to his nephew, Little, to perform certain assessment work on the mining claims. Little received this sum, but failed to perform the work within the time required by law, with the express and fraudulent purpose of allowing title to the claims to become forfeited and he thereafter, in the following year, with the aid of the funds so advanced, caused the property to be relocated in the name of his uncle, J. E. Raney. Thereafter, in 1918, Raney conveyed the claims by a quitclaim deed to Little. In June, 1921, appellant Security Trust Company obtained its judgment against Little and levied upon and sold under execution the property so acquired by Little as trustee. At this time, and long prior thereto, the Trust Company had

full knowledge of plaintiff's claim to the property by reason of its action against Blood and the *lis pendens* which was recorded. [7] Under these circumstances the trial court found that the judgment of the Trust Company was subordinate to plaintiff's claim and that Little was a mere trustee of defendant Blood. The interest of Little in the property being that of a mere naked trustee, of which fact the Trust Company had notice, it was not subject to the debts of Little and could not be reached or affected by any act of his creditors. (*De Celis* v. *Porter*, 59 Cal. 464.) This being so, the purchaser at the execution sale took no title to the property, as purchasers at such sales take only the title the debtor has. No more, no less. (16 R. C. L. 138.)

Under all the circumstances of the case the trial court rightfully held that title to the property was in Blood and not in Little, and this being so, the defense relied upon by appellants is one that they are in no position to make. They being complete strangers to Blood, they are not concerned with any defense that he might or might not make. There is no merit in the appeal.

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1926.