[Civ. No. 1612.   Fourth Appellate District.—March 9, 1936.]

E. R. ABBEY, Public Administrator, etc., Respondent, v. DR. ALLEN E. ZIMMERMAN et al., Appellants.

Thomas L. McFadden and Perry F. Backus for Appellants.

George H. Gobar and Dee Holder for Respondent.

MARKS, J.—This is an action to set aside a conveyance executed on January 12, 1932, by Ida Mae Zimmerman, now deceased, purporting to convey to defendant Zimmerman title to about forty-one acres of improved land in Orange County.

Ida Mae Zimmerman died testate in Orange County on May 12, 1932, and E. R. Abbey, public administrator of that county, was appointed and qualified March 31, 1933, as administrator with the will annexed of her estate. Claims against the estate in an aggregate amount of several thousand dollars were presented, allowed and approved. The total assets of the estate which the administrator could reduce to possession were of a value of less than $100 and upon request of one of the creditors he instituted this action to set aside the deed to defendant under the authority of section 579 of the Probate Code. Judgment went for plaintiff and defendants have appealed.

The complaint contained three causes of action, two of which were expressly abandoned by plaintiff during the trial. The one remaining alleged the conveyance was made with the express intent on the part of deceased and defendant Zimmerman to hinder, delay and defraud creditors of deceased and was without valuable consideration. In a supplemental complaint it was alleged that defendant Zimmerman conveyed the property to defendant Westbrook without consideration.

The answer of Zimmerman denied the fraud and alleged the conveyance was made upon a consideration of more than $75,000. In a special defense he alleged that at the time of the transfer of title deceased was indebted to him in excess of $15,000 under a written contract and for money loaned her, and in the added sum of $60,000 which was secured by a lien on the real estate in the nature of a mortgage. He alleged that following the conveyance he had expended several thousand dollars in paying delinquent taxes and in principal and interest of debts of deceased some of which were evidenced by notes of deceased which he had signed as accommodation maker. Zimmerman offered to restore title to plaintiff if he could be placed in the position he occupied at the time title to the real property was conveyed to him.

Defendant Westbrook denied all the allegations of the complaint, but not of the supplemental complaint, and consented to be bound by any judgment that might be rendered against Dr. Zimmerman.

The trial court found express fraud on the part of Dr. and Mrs. Zimmerman and that the conveyance was made without consideration. The judgment canceled the deeds from de-

ceased to Zimmerman, and from Zimmerman to Westbrook; decreed the title to the real estate to be in the estate of deceased free and clear of the claims of defendants; enjoined defendants from asserting any right, title or interest in or to the property; decreed that if plaintiff be permitted to sell the property in the probate proceedings for the purpose of satisfying the debts of deceased he shall receive from such proceeds sufficient money to pay the debts of deceased and the creditors of her estate and that any balance remaining be paid to defendant Westbrook; that if sufficient money be not recovered from such sale to pay the creditors, defendants, within thirty days from the time they receive notice so to do, pay to plaintiff "all and each and every part of the rents, issues and profits received by said defendants, and each of them, from said real property since the 12th day of January, 1932, to the extent necessary to satisfy the indebtedness of said estate to said creditors thereof, and each and all of them". The lien of Zimmerman on the real estate for $60,000 which he had when deceased conveyed it to him was not reinstated.

Deceased and defendant Zimmerman were married on June 5, 1903, and separated in 1922. Their assets at that time were the real estate here involved and a dental office operated by Dr. Zimmerman in Los Angeles. On February 9, 1922, they executed a property settlement. By its terms Dr. Zimmerman agreed to execute a deed conveying the real estate to Mrs. Zimmerman, he retaining a lien upon the property, in effect a mortgage, to secure the payment of $60,000, without interest, to him in fifteen years. The property was encumbered by a mortgage securing a note for $7,500 which Mrs. Zimmerman agreed to pay out of the income from the property. She also agreed to pay him one-third of the net profits from the property as long as the $60,000 remained unpaid. It was also agreed that the parties each owned one-half of the dental office and that in lieu of one-half of the profits from it Dr. Zimmerman would pay her $100 per month. In case of the sale of the office Mrs. Zimmerman was to receive one-half of the sale price, whereupon the monthly payment to her would cease. It was agreed that if Dr. Zimmerman died first, and before the $60,000 was paid, Mrs. Zimmerman would pay $30,000 to his estate within two years and be released from paying the balance. Should Mrs. Zimmerman die first it was provided that Dr. Zimmerman would become the owner

of one-half of the real property besides receiving the $60,000. Dr. Zimmerman executed the deed and made the payments of $100 per month up to and including the payment due January 1, 1932. The parties had been divorced subsequent to the execution of this contract.

Mrs. Zimmerman was not a success as a business woman. The mortgage on the real property was first increased to $10,000, Dr. Zimmerman being required to sign the note and mortgage because of his lien for $60,000. In November, 1928, this encumbrance was increased to $15,000 with Dr. Zimmerman again being required to sign the necessary instruments. Mrs. Zimmerman signed an affidavit, which was recorded, reciting that the obligation was given for her benefit, with Dr. Zimmerman as accommodation maker, and agreeing to hold him harmless under it. The encumbrance was increased to $25,000 in May, 1931. Mrs. Zimmerman signed a declaration that she received the proceeds of that loan and that Dr. Zimmerman signed only for her accommodation.

At the trial Dr. Zimmerman produced cancelled checks payable to Mrs. Zimmerman for a total of $10,719.20, which he testified represented advancements made to her to assist her in her financial difficulties. He also testified that he advanced $2,000 in cash to get her out of what he termed a "jam" in a neighboring city. As accommodation maker he also signed for her a promissory note for $10,000, part of which he had to pay after January 12, 1932. This evidence stands undisputed in the record.

Mrs. Zimmerman's financial affairs became acute in 1931. Frances Hargrove secured a judgment against her for $5,681, and other creditors were pressing for payment. Mrs. Zimmerman gave Dr. Zimmerman a note for $11,000 secured by a crop and chattel mortgage on her automobile and the orange crops on the real estate. It is probable that this was used as collateral to the $10,000 note we have just mentioned. She also gave him an order in a like amount on the packing house handling the crops.

An attachment issued in the Hargrove case was levied on the safe deposit box of Mrs. Zimmerman in which were found six promissory notes totaling $2,400, each signed by Dr. Zimmerman, each dated January 1, 1931, due two years after date and payable to Mrs. Zimmerman. These were released to Dr. Zimmerman on his third party claim supported by an

affidavit of Mrs. Zimmerman to the effect that the notes were given her by Dr. Zimmerman to be negotiated and that she had no interest in them and that they did not belong to her.

On January 12, 1932, Mrs. Zimmerman executed a grant deed to the real estate to Dr. Zimmerman and also a bill of sale to the ranch tractor and tools. On February 23, 1932, she gave him a bill of sale to the furniture and furnishings in the dwelling house on the property. Under date of January 18, 1932, the parties executed an agreement which recited that Mrs. Zimmerman had been indebted to Dr. Zimmerman in an amount in excess of $75,000 and which released the lien of $60,000 on the real property. This instrument further recited that Mrs. Zimmerman had been unable to pay Dr. Zimmerman any part of the money due him under the separation agreement of February 9, 1922, and particularly any part of the net profits from the orange grove. Under date of January 27, 1932, the parties executed a contract which recited numerous debts of Mrs. Zimmerman and cancelled the property settlement agreement of February 9, 1922. It transferred the dental office to him and released him from the payment of $100 per month in lieu of half the net profits and bound Dr. Zimmerman to pay her $100 per month for her support during the rest of her life. These documents were seemingly all executed as part of one transaction.

The trial court found that the conveyance of the real estate on January 12, 1932, was made by Mrs. Zimmerman to Dr. Zimmerman without any consideration. ■ This finding is not only unsupported by the evidence but is contrary to all the evidence in the record. However, this finding is not necessary for the support of the judgment as the trial court further found that in consummating the transaction we have outlined, the actual fraud was participated in by Mrs. Zimmerman, the grantor, and Dr. Zimmerman, the grantee, with the intention of hindering, delaying and defrauding the creditors of Mrs. Zimmerman. In *Rossen* v. *Villanueva*, 175 Cal. 632 [166 Pac. 1004], it is said: "Where the transferee participates in the fraudulent intent, the transfer is void as to creditors, even though a valuable consideration may have been paid."

The finding of actual intent to defraud the creditors of Mrs. Zimmerman which actuated both parties in making the conveyance of the real property is the important finding here.

There is no good purpose to be served in detailing the rather long and laborious evidence which was introduced to support such a finding. We have studied the record and have reached the conclusion that there is sufficient evidence to support the inference drawn by the trial court of an actual fraudulent intent on the part of both parties. The question of a fraudulent intent is one of fact to be decided by the trial judge and not one of law to be decided by us. (Sec. 3442, Civ. Code.) Where, as here, there is substantial evidence in the record of actual fraud on the part of both the grantor and grantee, meager though it be, we cannot disturb the finding on appeal.

Having reached the conclusion that the finding of actual fraud on the part of both parties to the transaction has some evidentiary support we must proceed to a consideration of the legal soundness of the judgment actually rendered. It must be borne in mind that the judgment quieted plaintiff's title to the property as against both defendants and only permitted Dr. Zimmerman's grantee to participate in the returns from its sale after the legal debts were paid. Under the judgment, if the property were not sold, neither defendant could ever claim any interest in it. The complaint alleged the property to be worth $70,000. The trial court found it worth $100,000. The encumbrance on the property remaining after the release of Dr. Zimmerman's lien was $25,000. The debts of deceased remaining unpaid after Dr. Zimmerman had applied several thousand dollars upon them subsequent to January 12, 1932, and after Mrs. Zimmerman's death, do not clearly appear, yet it would seem they should not greatly exceed $5,000. Under the judgment rendered, if, during probate, the property could be mortgaged for a sufficient amount to pay the existing encumbrance and approved debts it would then be distributed under the will of Mrs. Zimmerman and neither Dr. Zimmerman nor his successor would have any interest in it.

It is an established fact that from February 9, 1922, to at least January 12, 1932, Dr. Zimmerman was the owner of a valid, existing and unimpeachable debt of deceased in the sum of $60,000, to be reduced to $30,000 only in the event that he predeceased her, which debt was secured by a lien in the nature of a mortgage on the real estate. The trial court so found and all the evidence supports the finding. This cannot be questioned by plaintiff and the creditors for the very

title of Mrs. Zimmerman by which they hope to benefit arose in the transaction in which this debt and the lien securing it was created. Because of the finding of fraud on his part, must Dr. Zimmerman be penalized by the cancellation of this valid preexisting debt and the preexisting lien securing it?

A conveyance made in fraud of creditors is void. (Sec. 3439, Civ. Code; *Rossen* v. *Villanueva, supra; Vogel* v. *Sheridan,* 4 Cal. App. (2d) 298 [40 Pac. (2d) 946].) A transfer void as to creditors of the grantor because of fraud has the effect of leaving the title in the grantor as fully as though no attempted transfer had been made. (*First Nat. Bank* v. *Maxwell,* 123 Cal. 360 [55 Pac. 980, 69 Am. St. Rep. 64]; *Scholle* v. *Finnell,* 166 Cal. 546 [137 Pac. 241].)

The case of *Ackerman* v. *Merle,* 137 Cal. 169 [69 Pac. 983], is particularly in point on the question of the voiding of Dr. Zimmerman's lien. In that case the plaintiff, who was the administrator of his intestate's estate, brought suit to set aside conveyances made to defraud creditors of the decedent grantor. The trial court found that two conveyances had been fraudulently made and cancelled them. One of the parcels conveyed was encumbered by a prior mortgage which had been paid by the grantee after he received the deed. The trial court in its judgment revived the released mortgage and subrogated the grantee, who had paid it, to the rights of the mortgagee. The plaintiff appealed from this judgment. In affirming it the Supreme Court said: ''The creditors were entitled to subject to the payment of their claims only the property fraudulently conveyed. This property consisted of decedent's interest in the land, which was that of a mortgagor with a right to redeem from the mortgage. The interests of the mortgagee and the mortgagor in land are for many purposes considered as separate and distinct, and they are each the subject of separate and independent conveyances. By the fraudulent deed in this case the defendant did not acquire the interest of the mortgagee in the land, but she acquired that interest by borrowing money and paying off the mortgage debt. This was an independent transaction, in no way tainted with fraud nor accompanied with an intention to avoid creditors, for it is clear that this interest of the mortgagee could not be subjected to the claims of the creditors of the mortgagor. She having paid off this mortgage debt, the trial court treated the defendant as entitled to be subrogated

to the rights of the original mortgagee, and that the creditors' claims must be secondary and subject to those rights in the hands of the defendant, just as they had been when the mortgage interest was in the original mortgagee. Of this the creditors cannot be heard to complain in a court of equity. Their rights in the property are not enlarged or extended by the fraudulent transfer. They can get nothing for the mere sake of punishing the fraudulent grantee, and are entitled in equity only to have such interest in the property applied to the satisfaction of their claims as has been fraudulently conveyed away. The principle involved in the case is aptly illustrated by a quotation from the case of *Hamilton Nat. Bank* v. *Halstead,* 134 N. Y. 520 [31 N. E. 900, 30 Am. St. Rep. 693], as follows: 'Should A convey his farm to B, subject to a valid pre-existing mortgage of five thousand dollars held by a third party, and B subsequently dispose of it for a larger sum, out of the proceeds of which he pays the mortgage, he cannot be required to pay to the creditors the full value of the farm without deducting the amount due on the mortgage; for as to that sum the creditors have no equity. If the fraud had not been consummated, only the value of the property in excess of the mortgage could have been made available in payment of the claims of the creditors. As to that interest secured by the mortgage, no wrong was done them. Having no right to such interest, no principle of equity exists on which to found a claim for an appropriation of any benefit, on account of it, from a fraudulent grantee of the equity of redemption.' ''

In the case of *McKinney* v. *Wright,* 105 Cal. App. 401 [287 Pac. 506], the plaintiff, a trustee in bankruptcy, brought suit to cancel a conveyance because it had been made in fraud of the creditors of the bankrupt. A judgment which permitted the grantee to remove a house from the premises was affirmed on appeal.

Under these authorities we are of the opinion that the creditors of deceased had no right to benefit by a cancellation of the lien on the property held by Dr. Zimmerman at the time of its conveyance to him. The debt and this lien should have been revived by the judgment.

A grant made in fraud of creditors is valid between the parties and to all the world except as to the creditors of

the grantor. (*First Nat. Bank* v. *Eastman,* 144 Cal. 487 [77 Pac. 1043, 103 Am. St. Rep. 95, 1 Ann. Cas. 626]; *Moore* v. *Schneider,* 196 Cal. 380 [238 Pac. 81].) The grantee takes whatever interest the grantor had qualified only by the interest of the creditors and after their claims are satisfied is usually entitled to any surplus remaining. (*Goldberg, Bowen & Co.* v. *Demick,* 77 Cal. App. 535 [247 Pac. 261].) The case of *Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303], was an action to cancel a conveyance allegedly made to defraud the creditors of the grantor. There the Supreme Court announced the following rule: "It is to be observed, however, that in a case like this the judgment should be that property fraudulently conveyed, or so much thereof as is necessary, be applied to the satisfaction of the debts, and that the residue, if any, go to the grantee. It is not to go into the assets of the estate for any purpose other than the payments of the debts. The residue does not go to the heir; for he stands in the shoes of the fraudulent grantor." (Sec. 580, Probate Code.)

The judgment of the trial court requires defendants, under certain circumstances, to pay to plaintiff all the rents, issues and profits from the real estate received after January 12, 1932. It is clear from the record that several thousand dollars of such receipts were paid out by Dr. Zimmerman on debts of deceased, and for taxes delinquent at the time he received the deed. It may be that other deductions should be made from these receipts. Dr. Zimmerman should be entitled to one-third of the net income of the property, if there should prove to be any. Before final judgment, evidence should be taken to determine the amount of money, if any, in the hands of either of the defendants which should be paid to plaintiff out of the receipts from the property, should it be necessary to resort to this fund.

Defendants argue questions of rulings of the trial court on objections to the admission in evidence of declarations of deceased. The proper rules are laid down in *Emmons* v. *Barton, supra,* and, *Allan-MacMaster Co.* v. *Exterstein,* 126 Cal. App. 757 [15 Pac. (2d) 184].

The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 7, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1936.