[Civ. A. No. 103058. Appellate Department, Superior Court, County of San Diego.—April 18, 1941.]

L. B. GRANT, Appellant, v. K. SEGAWA et al., Respondents.

George A. Westover for Appellant.

Dempster McKee for Respondent.

THE COURT.—In May of 1938 one K. Segawa executed to Frank Naruto & Co., Ltd., a promissory note in the principal sum of $1100.72. The said K. Segawa was also at that time indebted in the sum of $229 to Fred C. Silverthorn & Sons, Inc., for certain fertilizer purchased. Both the Naruto note and the Silverthorn account having been assigned to the plaintiff, L. B. Grant, he, on December 3, 1940, obtained judgment in the Municipal Court of the City of San Diego against the said Segawa for the said sums with interest, attorney's fees provided for in the note, and costs. This judgment has become final. Grant proceeded under it to levy on certain personal property, including a Ford 1939 8-stake truck and a Case Model "R" tractor, as to each of which one George Segawa, a minor son of the said K. Segawa, filed a third party claim. Upon the application of the plaintiff, Grant, hearings were had in the municipal court to determine title to the Ford truck and the tractor, and on January 24, 1941, that court entered its judgment to the effect that the minor, George Segawa, was the absolute owner of the truck, and the owner of the equitable interest in the tractor, and entitled to the possession thereof, determined that neither was subject to levy by the plaintiff, and directed that the officer making the levy deliver them to the minor.

Apparently the plaintiff undertook to move the municipal court for a new trial in this proceeding, for the record contains a notice of appeal both from this judgment on the third party claims, and from a denial of such motion for new trial. Nothing else appears in the record before us respecting this motion for new trial or the grounds upon which it may have been based, but since it has been expressly

decided in *Spiegelman* v. *Bowlus,* 15 Cal. App. (2d) (Supp.) 765 [59 Pac. (2d) 225], that no motion for new trial lies in this type of proceeding, and since, furthermore, the statute provides for no appeal from an order denying a new trial, such attempted appeal must be dismissed. Accordingly we have to consider only the appeal from the judgment.

▇ It appears from the evidence that in the spring of 1938, K. Segawa was operating what was known as the Perry ranch under some arrangement with one Higuchi, for whom it is claimed he was foreman. The Segawa family consisted of father, mother, and several children, of whom George was the oldest. The family lived at the ranch, working together and raising crops there. George, then 17 years of age, was graduated from the Sweetwater Union High School that spring. In August of that year the father, K. Segawa, sustained an injury to his hand, in consequence of which he was incapacitated, at least until the early part of 1939, from active ranch work. During a portion of the interim he was in a hospital suffering from blood poisoning. Meanwhile, George assumed general charge of the ranch operations, opening in his own name a bank account at Chula Vista where his father formerly had an account, and thereafter drew the checks for the operating expenses and the support of the family against the account so opened by him. These family expenses he describes as "all the usual expenses of keeping a house." He and his father both testified that while the latter was in the hospital in August or September of 1938, the father verbally turned over the operations and ranch effects to his son George, telling George that all his earnings from then on would be his own. This is the principal evidence in the record urged as supporting the theory of a valid transfer. The father after six weeks more or less in the hospital, returned to his family and has been reasonably well since, though claiming still to have some trouble with his hand.

Shortly after the father returned from the hospital, George, who was born in America, took in his own name a sub-lease from his aunt on another and different ranch, known as the "George" ranch, and the family moved thither, and have, ever since, operated this second ranch, the father himself being more or less active in and about the work, doing some of it himself, and the younger children participating in what has

been done; and there is no question but that the whole family has gained its living entirely from the proceeds of these operations. George, in referring to what was turned over to him in August or September, 1938, asserts that his father gave him the father's equity in a tractor and in a truck; also gave him two plows, a disc, a chisel, a rebuilt Fresno, and a rebuilt leveller. He also mentions a horse. The father testified that he gave George the horse and miscellaneous farming equipment. George says that the father later gave him an equity in a touring car. The only consideration that George claims to have given for any of these asserted transfers was the payment of $400 more or less of hospital and doctor's bills incurred by his father, which payments were made from the proceeds of the ranch operations. None of these alleged transfers were accomplished by such change of possession as would conform to the requirements of section 3440 of the Civil Code, and each of them appears to have been fraudulent as against creditors under that statute. George claims the Ford 1939 8-stake truck now in controversy by virtue of a transaction whereby he turned in at a valuation of $418 or thereabouts the old truck gotten from his father and bought in his father's name the new truck. George signed an order sheet in connection with this purchase, but according to the evidence, including his testimony, the salesman took the contract to the father, who signed it himself. The deferred payments on this new truck have since been made by George from the proceeds of the ranch. As respects the Case Model "R" tractor, George claims to be its equitable owner under a conditional sales contract made to him about November 15, 1940. According to his testimony he bought it for $875, turning in thereon, at a valuation of $550, the old tractor, the equity in which he claims his father relinquished to him, and on which he had completed the payments from monies derived from the ranch operations. It is undisputed that the Segawa family, as a whole, has been dependent at all times since the spring of 1938 upon the operation of the respective ranches referred to, and it is too clear for argument that the income therefrom has been the result of the labor of the whole family and has, to all intents and purposes, been treated as that of the family for the benefit of all its members.

Looking at the foregoing showing as a whole, George's continued relations with the family, including not only his continued residence at home, but the circumstance that all the family earnings continued to be pooled and applied so far as needed for the living expenses of father, mother, and the children, are hard to reconcile with any theory that he had been emancipated by his father under the conditions contemplated by section 211 of the Civil Code. The contention, however, which he makes here, goes far beyond any assertion of such emancipation and amounts to a claim that his father, disregarding for the most part his own debts, relinquished practically all his property to him, his son, on no other consideration than that the son, from the proceeds of the labor of the family as a whole, should meet only certain arbitrarily selected obligations of the father. Not only are the claims now made by George Segawa obnoxious to section 3440 of the Civil Code above referred to, but the asserted transfers of the father's property were, as it appears without substantial conflict of the evidence, made without fair consideration and were, therefore, fraudulent as to the father's creditors under the provisions of section 3439.06 of that code. Furthermore, it must be borne in mind that under section 3439.07 of the Civil Code, if the father and son actually entertained the idea of defeating creditors by what, according to their testimony, transpired between them at the hospital, even if it be assumed that this really occurred at all, such intent would of itself render the transaction void for actual fraud as to such creditors, and that under section 689 of the Code of Civil Procedure a third party claimant is in the position of a plaintiff charged with the burden of proof to establish the rights that he claims. To be sure fraud is never presumed, and whether a fraudulent intent exists is said to be a question of fact for a trial court rather than of law for an appellate tribunal (*Abbey,* v. *Zimmerman,* 12 Cal. App. (2d) 311, 316 [55 Pac. (2d) 903]). For this latter reason we forbear to rest our decision on the assumption of an actual intent to defraud on the part of the Segawas, however strongly the evidence might seem to point in that direction. It is enough that in view of the above mentioned sections 3440 and 3439.06 of the Civil Code, the purported transfers to the son cannot be upheld, nor does the evidence sustain the trial court in having treated George Segawa as entitled to the proceeds of

950

what, in fact, the work of the family as a whole produced upon the two ranches.

The respondent asserts that the Case Model "R" tractor is exempt from execution under the provisions of section 690.3 of the Code of Civil Procedure as an implement of husbandry. Since, however, he is not the judgment debtor, he is in no position to raise that question.

The attempted appeal from the order denying the motion for new trial is dismissed.

The judgment rendered on the third party claims is reversed.