[Civ. No. 22187.   Second Dist., Div. One.   July 25, 1957.]

C. W. BEMER, Appellant, v. ROBERT W. BEMER et al.,
Defendants; MARY C. BEMER, Respondent.

Kindel & Anderson and Orville O. Clarke for Appellant.

A. Brian Weinberg for Respondent.

FOURT, J.—This is an appeal from a judgment denying to the plaintiff the right to impress a lien on certain real property which was formerly community property and presently standing in the name of the respondent, the ex-wife of her codefendant, for money lent by the plaintiff to the husband, codefendant of the respondent, during marriage.

A résumé of the facts of the case as developed by the evidence is as follows: C. W. Bemer, the plaintiff and appellant, a resident of the state of Michigan and the principal of a local high school, is the father of Robert W. Bemer, one of the defendants in the action. Robert W. Bemer and Mary C. Bemer, residents of Los Angeles County, were husband and wife during the times in question and up to March 5, 1952, at which date she secured an interlocutory judgment of divorce in the Superior Court in Los Angeles County. From his life savings, C. W. Bemer loaned certain sums of money to Robert W. Bemer while Robert and Mary lived together as husband and wife. The first of such loans was about March 1, 1948, when Robert borrowed $1,000 from his father and gave a promissory note therefor. There was testimony that the money so advanced was used for living expenses. The second loan was about August 10, 1948, when the son borrowed $4,000 from his father, ostensibly to invest in a cabinet and furniture business. The business was abandoned prior to March, 1949.

The returns from the business during the interim were apparently used to support Robert Bemer and his wife and children. There was no note given to evidence the $4,000 transaction. There were numerous letters, however, by the son to the father wherein the son acknowledged the debts. The third loan was about December 5, 1950, when Robert again borrowed $1,000 from his father and gave a promissory note therefor. There was testimony to the effect that this money ultimately was expended on improvements to a parcel of real property known hereafter as the "Malibu property," which had been purchased during the marriage of Robert and Mary out of the winnings of a contest Robert entered. The wife, however, testified that during the first few months of 1951, her husband spent the $1,000 he had received in December, 1950, on a woman acquaintance of his. The respondent did not sign any of the notes and did not know of the receipt of the moneys at the time the same were delivered to her husband. She did not participate in securing the moneys, nor any part thereof, and never agreed to repay the same. The husband handled all of the financial matters of the family and the wife was completely ignorant of the negotiations between her husband and his father. The wife was not aware of the disposition of the $1,000, secured in the early part of 1948, and the $4,000 secured in August of 1948. It is certain, however, that none of the moneys obtained in 1948 went into the Malibu property because that property was not purchased until 1950.

Robert and Mary separated in June or July of 1951, and she secured an interlocutory decree of divorce on March 5, 1952. In the decree of divorce the court distributed one-half of the Malibu property to Mary as her separate property and the other one-half to Robert as his separate property. At the time of the divorce there were no encumberances, no lien or liens, nor lis pendens filed with reference to the property in question. Very shortly after the separation, in June or July of 1951, the son wrote to the father and told him of the separation and that his wife was seeking an award to her of the Malibu property.

On about February 3, 1954, the plaintiff filed his action on the notes and for the money lent, for declaratory relief, and to impress a lien upon the Malibu property. On February 24, 1954, and before she knew of or had been served with process in the action of C. W. Bemer, Mary Bemer brought an action against Robert Bemer for partition of the Malibu property.

On about February 26, 1954, C W. Bemer filed an amended complaint and concurrently therewith a writ of attachment on the Malibu property. On March 8, 1954, a summons on the amended complaint was issued, and on March 9, 1954, a notice of pendency of action was filed, and on March 16, 1954, Mary Bemer was served with a copy of the summons and complaint.

C. W. Bemer first learned of the partition suit of Mary Bemer about April 8, 1954, after default had been taken by Mary Bemer against her former husband, Robert Bemer. C. W. Bemer made a motion to set aside the default and to intervene in that action, and each of such motions was denied on April 19, 1954.

The suit of C. W. Bemer against Mary Bemer and Robert Bemer then proceeded to trial on December 1, 1955. The respondent states in substance that at the time of trial the judge called counsel into his chambers and stated that from his reading of the pleadings, it appeared to be a question of law except for proof of the due execution of the notes, acknowledgment, whether such were now due and payable and whether such funds were used for the community. Counsel for the plaintiff stated that he intended to question whether the statutes of limitations and laches were properly pleaded by Mary Bemer and further stated that he would not raise the questions provided counsel for Mary Bemer would stipulate that the notes were duly executed by Robert Bemer and that the debts were presently due and owing to C. W. Bemer by Robert W. Bemer. Counsel for Mary Bemer stated that he would so stipulate if his client were willing. The judge and both counsel then agreed that briefs would be submitted on all matters other than whether the funds were used for the community and that evidence would be taken on that issue. After consulting with Mary Bemer, her counsel then entered into the stipulation as the judge took the bench.

Robert Bemer was present without counsel and representing himself.

The record discloses that the stipulation in open court was substantially as follows:

"Mr. Culpepper: The plaintiff and both defendants stipulate to the due execution of the note on the first cause of action in the sum of $975.00. The due execution of the note on the 3d cause of action in the sum of $1,000.00; and to the loan of $4,000.00 in the year 1948, and that there has been proper

acknowledgment of all three dates by Mr. Bemer. That the defense of the statute of limitations——

"MR. CLARKE: I think, counsel, we ought to add — The notes as to Mr. Bemer are now due, owing, and unpaid.

"MR. CULPEPPER: Yes, that the notes as to Mr. Bemer are now owing by Mr. Bemer——

"MR. CLARKE: To the plaintiff.

"MR. CULPEPPER: And they are unpaid.

"That the defense of statute of limitations as far as Mary C. Bremer is properly raised by Mary Bemer's pleadings, and that such may be raised, if it is applicable, to the impressment of the loan on the real property that was divided between Mr. Robert Bemer and Mary Bemer by the Interlocutory Decree; and it is also stipulated that the defendant, Mary Bemer, cannot be held severally liable in any form or fashion for any of these debts, except possibly to the impressment of the loan on the realty.

"MR. CLARKE: May we advise the Court what we believe are the remaining issues, then, in the case?

"THE COURT: Yes.

"MR. CULPEPPER: Number one, whether Mr. Bemer can waive the statute of limitations as to Mrs. Bemer relative to the impressment of the loan on the real property;

"Whether the defendant, Robert Bemer, has ability to pay said debts;

"Whether Robert Bemer still has any of the property other than the real property that was bought by the loan and particularly the business machinery; and the issue

"Whether the money borrowed by Mr. Bemer was used for community purposes.

"MR. CLARKE: May we have the record show, please, that Mrs. Bemer is represented by Mr. Culpepper?

"THE COURT: Very well.

"MR. CLARKE: And that the defendant, Robert Bemer is present representing himself. I think we should also for the record indicate whether or not Mr. Bemer agrees to the stipulation.

"MR. ROBERT BEMER: Yes, I do.

. . . . . . . . . . .

"MR. CULPEPPER: May we have the additional stipulation that the pay roll records of Mr. Bemer as of June of this year may be admitted into evidence to show his ability to pay at that particular period of time. I think it will probably still be applicable to this time.

"Mr. Clarke: I think we possibly should also have the record show, your Honor, that the other defenses, other than those indicated by the issues, are waived by the defendant Mary Bemer so that the pleadings reflect only the issues that are involved here as we have stated them.

"The Court: Very well.

"Mr. Clarke: Is that satisfactory?

"Mr. Culpepper: Yes."

There can be no doubt that an attorney can bind his client in any step in an action by his agreement entered upon the minutes of the court. (Code Civ. Proc., § 283; *Sterling Drug, Inc.* v. *Benatar*, 99 Cal.App.2d 393, 400 [221 P.2d 965]; *Cathcart* v. *Gregory*, 45 Cal.App.2d 179, 186 [113 P.2d 894].)

A stipulation may lawfully include or limit issues or defenses to be tried, whether or not such issues or defenses are pleaded. (*Petroleum Midway Co.* v. *Zahn*, 62 Cal.App.2d 645, 649 [145 P.2d 371]; *Smith* v. *Masonic Mines Assn.*, 57 Cal.App. 172 [206 P. 1008]; *Estate of Bainbridge*, 6 Cof. 308.)

The appellant's first contention is that the court erred in finding that the acknowledgment of the debts was not sufficiently specific. He contends that because of, and in reliance on the stipulation he did not offer any evidence on the matter other than that which was contained in the stipulation as stated in open court. It will be noted at once that it was not stipulated that Mary Bemer was indebted to C. W. Bemer, nor was it stipulated that she acknowledged any debt to him, other than a debt owing to him by his son, her former husband. She did not stipulate that her former husband was her agent, nor that he had any authority whatsoever to bind her in any such transaction. Surely, it would not follow that if she stipulated that Robert Bemer had acknowledged a debt by him to C. W. Bemer that she thereby stipulated that she for herself had acknowledged the same debt to C. W. Bemer. There is nothing in the letters, so far as we are able to ascertain, which recites that she acknowledged the obligations in any wise whatsoever. We believe that if there was any ambiguity in the stipulation, as contended, as to the acknowledgment, that the court had the inherent power to reject and disregard the stipulation and to determine the question on the evidence before the court. It is up to the parties to state a stipulation clearly and properly if they intend to be bound by it, and a party will not be heard to complain if later it is determined that by his own carelessness in the

choice of words he did not state what he now says he really meant to say.

The next contention of the appellant is that the court erred in finding that the acknowledgment of the debt by the husband, Robert Bemer, during marriage does not bind the wife, at least to the extent of the former community property now in the possession of the former wife. Sections 360 and 360.5 of the Code of Civil Procedure, as of the date in question, read as follows:

"§ 360. [Acknowledgment or promise.] No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby, provided, that any payment on account of principal or interest due on a promissory note made by the party to be charged shall be deemed a sufficient acknowledgment or promise of a continuing contract to take the case out of the operation of this title and the time within which an action may be brought upon a promissory note or upon any installment of principal or interest thereof shall not commence to run until the last payment of principal or interest made by the party to be charged prior to the time when the statute of limitations would otherwise have run on the principal sum or on the installment thereof last due."

"§ 360.5 [Same: Waiver: When barring defense to action: How long effective: Renewal: When section not applicable.] No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated. No waiver executed prior to the expiration of the time limited for the commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title and no waiver executed after the expiration of such time shall be effective for a period exceeding four years from the date thereof, but any such waiver may be renewed for a further period of not exceeding four years from the expiration of the immediately preceding waiver. Such waivers may be made successively. The provisions of this section shall not be applicable to any acknowledgment, promise or any form of waiver which is in writing and signed by the person obligated and given to any county to secure repayment of indigent aid or the repayment of moneys fraudulently or illegally obtained from the county."

Mary Bemer did not sign the acknowledgments, as heretofore indicated, and did not authorize the husband to do so for her, and in fact the testimony is uncontradicted that she had no knowledge of such acknowledgments in her husband's own behalf. The husband and wife were actually separated from each other at the time the husband did so acknowledge the debts for himself, and C. W. Bemer knew at such time of the separation of his son and the respondent. It may be noted here, too, that the son did not file an answer to, or attempt by any pleading to contest the father's complaint.

"As a general statement, the promise of one of several joint obligors cannot avail to revive as against the others a cause of action barred by limitation, or to suspend the running of the statute." (*Searles* v. *Gonzalez,* 191 Cal. 426, 434 [216 P. 1003, 28 A.L.R. 78].)

The statute of limitations is a plea personal to the debtor which he or she may use or waive as he or she pleases, unless some privity exists between the parties where a different question may be presented. (*Goldberg, Bowen & Co.* v. *Demick,* 77 Cal.App. 535, 540 [247 P. 261].) In this case, under the circumstances, we do not believe any such privity existed to take the case out of the general rule. It is said in 31 California Jurisprudence 2d, at page 646, section 229: "A husband, for example, cannot, in the absence of authority from his wife who is comaker with him of a note, revive the note as against her after it is outlawed, by acknowledging the indebtedness. The immunity of the nonacknowledging co-obligor does not depend on whether his original liability was personal and direct or resulted incidentally from a charge against property."

The next contention of the appellant is that the court erred in finding that the plaintiff was not entitled to a lien against Mary Bemer's portion of the Malibu property. Civil Code, section 2881, provides: "A lien is created: 1. By contract of the parties; or, 2. By operation of law."

Here there was no contract between the respondent and C. W. Bemer as to any lien, and no sufficient showing was made by C. W. Bemer that by operation of law there was a lien against the property in question. In 1948, when $5,000 was loaned by C. W. Bemer to his son, Robert, the property was not even thought of as far as the husband and wife were concerned, and C. W. Bemer could not possibly have had in mind that he would have a lien against the same if he advanced the $5,000 to his son. The realty was purchased in

about July of 1950, with a portion of some contest prize money won by Robert and the property was held at all times, up to the divorce decree, in joint tenancy and not as community property. It is difficult to see, therefore, how the father could contend presently that he in any wise relied upon the community property in the making of the loans to his son. There was evidence which the court could have believed that the last $1,000 received by the son went for the expenses involved in his son's association with another woman, other than having gone into a building project on the property. The trial court's discretion, as exercised in this instance, should not be disturbed on appeal.

■ The next contention of the appellant is that the court erred in denying him relief under his cause of action for declaratory relief. We have examined the pleadings and the record in this case, and from a reading thereof we do not believe that the court abused its discretion in denying such relief. None of the cases cited by the appellant are, in our opinion, determinative of the question.

The appellant also contends that the court erred in finding that laches was a valid defense insofar as Mary Bemer was concerned. We have heretofore set forth the stipulation of the parties and it is true that if the stipulation is strictly construed, and if only that which was stated in open court is taken, as distinguished from that which was stated in the judge's chambers, it might be that the defense of laches, as contended by appellant, could not be considered. There was ample evidence before the court to establish laches of C. W. Bemer. The senior Bemer had knowledge prior to July of 1951, of the fact that his son and daughter-in-law were separating and that she was going to request that the Malibu property be awarded to her. In spite of that knowledge C. W. Bemer did nothing by way of any action until February 3, 1954. In any event, the defense of laches was only one of many reasons given by the trial court why judgment should not be in favor of the plaintiff, and even if the defense of laches is stricken entirely, the judgment would still have to be affirmed.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.