[Civ. No. 1146. Fourth Appellate District.—November 5, 1934.]

UNION TITLE INSURANCE COMPANY (a Corporation), Plaintiff, v. THE MAYTAG COMPANY (a Corporation), Appellant; BAY TRUST COMPANY (a Corporation) et al., Respondents.

Gray, Cary, Ames & Driscoll and J. M. Cranston for Appellant.

D. C. Collier and Hillyer & Boldman for Respondents.

JENNINGS, J.—This action was instituted by the plaintiff to enforce payment of the balance claimed to be due from Carl H. Heilbron and Katherine Matilda Heilbron, his wife, the makers of a certain promissory note, and to foreclose the mortgage on real property which was given to secure payment of the note. The Maytag Company, a corporation, owner and holder of a second mortgage on the same property, was joined as a party defendant with the makers of the note. The Bay Trust Company, a corporation, grantee of the real property mentioned in both mortgages, in a deed which was executed by the Heilbrons subsequent to the execution of both mortgages, was likewise joined as a party defendant in the action. The defendant Carl H. Heilbron defaulted in appearance and his default was duly entered. On October 27, 1932, the Maytag Company filed an answer in which it denied, for lack of information, certain allegations of the complaint and a cross-complaint in which the Heilbrons and the Bay Trust Company were named as cross-defendants, wherein it alleged the execution by the Heilbrons of a promissory note in its favor for $10,000 on September 1, 1925, payable two years after date and the execution by the same persons on the same date of a mortgage on the same property described in plaintiff's complaint to secure payment of said note; that on and after October 9, 1929, the cross-defendants Carl H. Heilbron and Katherine Matilda Heilbron, by written instruments delivered to the cross-complainant, had acknowledged the indebtedness represented by the note and promised and agreed to pay the same; that default had been made in the payment of the principal of said note and in the payment of interest thereon after October 1, 1926. The cross-complaint con-

cluded with a prayer for a personal judgment on the note against the Heilbrons and that such judgment be declared a lien inferior to plaintiff's lien but prior and superior to the rights, titles and interests of the cross-defendants. To this cross-complaint the cross-defendants Katherine Matilda Heilbron and the Bay Trust Company filed a joint answer in which these parties alleged that as to them the cause of action set forth in the cross-complaint was barred by the provisions of section 337 of the Code of Civil Procedure. They further denied that they or either of them had, at any time, by any written instrument, acknowledged the indebtedness described in the cross-complaint or that either of them had promised or agreed to pay the same. The cross-defendant Carl H. Heilbron entered no appearance to the cross-complaint and his default in this respect was noted.

When the action was called for trial it was stipulated in open court by counsel representing the Maytag Company, cross-complainant, and by those representing the cross-defendants Bay Trust Company and Katherine Matilda Heilbron that the plaintiff should have judgment in accordance with the prayer of its complaint. The trial then proceeded on the issues raised by the cross-complaint and the answer filed thereto by the cross-defendants. Upon the conclusion of the trial the court rendered judgment in plaintiff's favor against Carl H. Heilbron and Katherine Matilda Heilbron for the balance found due on the promissory note executed by these parties and foreclosing plaintiff's mortgage on the real property. A personal judgment against the Heilbrons was likewise rendered in favor of the cross-complainant for the amount found to be due on the promissory note executed by these parties to the cross-complainant on September 1, 1925. The mortgage on the real property which was executed by Carl H. Heilbron and Katherine Matilda Heilbron to secure payment of this note was, however, declared to be inferior to the interest of the cross-defendant Bay Trust Company in the real property and it was adjudged that the property be sold and if at such sale an amount in excess of that required to satisfy plaintiff's demand should be realized, such excess should be paid to the Bay Trust Company. From those portions of the judgment rendered in favor of the cross-defendant, Bay Trust

Company, the cross-complainant Maytag Company has prosecuted this appeal.

On this appeal two principal contentions are advanced by appellant. The first of these is, that the trial court's finding that in acknowledging the indebtedness represented by the promissory note executed on September 1, 1925, by certain letters addressed to appellant on October 9, 1929, the cross-defendant Carl H. Heilbron merely purported to act as the agent of his wife, respondent Katherine Matilda Heilbron, is not supported by the evidence adduced during the trial. It is appellant's contention that the undisputed evidence indicated that Carl H. Heilbron was in fact authorized to act as his wife's agent in acknowledging the indebtedness and that the court should have so found. The second contention of appellant is that the court's finding that at the time the property encumbered by appellant's mortgage was conveyed to the respondent Bay Trust Company, the grantee did not take the property subject to appellant's mortgage is likewise lacking in evidentiary support.

An intelligent consideration of the above-mentioned contentions requires a recital of the evidentiary facts which are in nowise disputed. On September 1, 1925, Carl H. Heilbron and his wife were the record owners of certain real property in San Diego County. This property was community property but was not their home and no declaration of homestead had been filed upon it. On the above-mentioned date the two Heilbrons joined in the execution of a promissory note by which they agreed to pay to appellant the sum of $10,000 two years after the date of the note. Coincident with the execution of this note the makers thereof executed a mortgage on the above-mentioned real property to secure payment of the note. The note bore interest at the rate of seven per cent per annum. The interest due thereon appears to have been paid by Carl H. Heilbron for a time but by October, 1929, it was considerably in arrears. On October 3, 1929, E. L. Nelson, the assistant secretary of appellant, addressed a letter to Carl H. Heilbron, in which reference was made to certain correspondence which had passed between Nelson and Heilbron in the month of April, 1928, relative to releasing

acreages from time to time as such acreages might be sold by Heilbron "from the Ramona Ranch on which we hold a second mortgage of $10,000.00". The letter concluded with a request that Heilbron should advise the Maytag Company fully as to his plan for meeting his obligation to the company and inform the company of the status of the ranch at that time, what loans, if any other than that due the company, had been .made on the security of the ranch property, whether the taxes assessed against the ranch had been paid, etc. In response to this letter, Carl H. Heilbron, on October 9, 1929, wrote two letters. One of these was addressed to E. L. Nelson, assistant secretary of the Maytag Company, and the other to Fred Maytag. The letter to Nelson stated that a proposed sale of four acres from the Ramona ranch "on which your Company holds a second mortgage of $10,000.00" had not been consummated. The letter further stated that the balance due on the first mortgage on the property had been reduced to less than a thousand dollars, that the state and county taxes had been paid and that the property was in better shape than when the second mortgage was executed. The letter contained an admission that the writer had not been financially able to make any payments of interest or principal on the second mortgage and that he did not anticipate being able to do so for some months in the future but that he was making every effort to get himself and his affairs in shape "so this matter may be cleared up at the earliest possible moment". The letter concluded with a statement that the writer had evolved a plan for developing the property as a club resort which he believed would enable him "to clear your mortgage up" and that he would describe the plan in detail in a letter which he would shortly address to Mr. Fred Maytag. The letter to Fred Maytag referred to the communication which the writer had received from E. L. Nelson "asking for information in regard to the second mortgage on the ranch and the present condition of the property". The communication contained a suggestion of a wish that the Maytag Company might see fit to "write this matter off their books as a loss against their government income tax, or in some other manner if possible, to let the matter remain as a personal matter between

yourself and the writer: I agreeing to do everything possible to clear the matter up at the earliest possible moment.'' A somewhat detailed outline of the writer's plan to develop the property as a club resort was then presented, together with the expression of a hope that it might appeal to Maytag and that the writer would have his cooperation ''in putting it over''. During the month of October, 1930, communications passed between E. L. Nelson of the Maytag Company and Carl H. Heilbron relative to the latter's indebtedness to the company and to Heilbron's proposal to develop the Ramona property as a club resort. Heilbron's letter of October 13, 1930, addressed to Nelson, referred to his ''recent inquiry relative to my note to your company'', stating that conditions had been such that he had been unable to do anything with the club project but that he had kept up his payments on the first mortgage, the amount of which had then been reduced to $746.92, that he was still making monthly payments on the first mortgage and that the taxes had been paid in full to date. The letter concluded with a statement that he was making plans to revive the club resort project. On February 11, 1931, Carl H. Heilbron conveyed the property described in appellant's mortgage to the Bay Trust Company. D. C. Collier, who was called as a witness for respondents, testified that he ''took the conveyance in the name of the Bay Trust Company''. On March 7, 1932, E. L. Nelson addressed a letter to Carl H. Heilbron, making inquiry as to the status of the first mortgage against the Ramona property and concluding with a request for a statement from Heilbron ''as to how matters stand at the present time and what we may expect on the note we are holding''. To this letter Heilbron replied on March 14, 1932, stating that on February 11, 1931, he ''had signed over to Col. D. C. Collier any equity that might remain in the property on which your company was kind enough to make me a loan'' and suggesting that Nelson communicate with Col. Collier in regard to the present status of the property. The letter concluded with an expression of regret that the writer had been unable ''to make any further payments on my note at this time and assure you that I do not in any sense repudiate this obligation and hope that

my condition will be such, some time in the future that I may be able to clear the entire amount up''.

The trial court found ''that at various times between August 18, 1927, and March 19, 1932, and particularly on October 9, 1929, said cross-defendant Carl H. Heilbron, by instruments in writing (copies of which instruments in writing are set out in Finding Number X) delivered to cross-complainant the Maytag Company, a corporation, acknowledged the indebtedness above described''. Finding number X contains copies of the two letters written by Carl H. Heilbron on October 9, 1929, and of the letter written by Heilbron on March 14, 1932, to which reference has heretofore been made. The court next found ''that cross-defendant Carl H. Heilbron, in acknowledging the indebtedness above described by said instruments in writing delivered to cross-complainant, the Maytag Company, a corporation, acted not only personally in his own behalf, but purported to act as the agent of cross-defendant Katherine Matilda Heilbron, who duly and properly ratified his actions in so acknowledging the indebtedness, which ratification was made at the time of trial, to-wit, March 20, 1933, and in the manner set out in Finding Number XII''.

It must be observed that the court in these findings did not definitely and with certainty find that Carl H. Heilbron acknowledged the indebtedness to appellant by his letters of October 9, 1929. We think, however, that this is reasonably and fairly implied from its findings, especially from the finding which refers particularly to the letters of the above-mentioned date.

Appellant does not attack the court's finding that Carl H. Heilbron acknowledged the indebtedness but does complain that the finding that Heilbron merely purported to act as his wife's agent in acknowledging the indebtedness and that his action in this regard was not authorized by the wife at the time it was accomplished but was ratified by her at the time of trial is not in accord with the undisputed testimony of the wife as given by her when she was called as a witness during the trial of the action.

Respondents, on the other hand, complain of the court's finding that Carl H. Heilbron acknowledged the indebtedness and contend that the letters of Carl H. Heilbron to appellant under date of October 9, 1929, and March

14, 1932, did not contain such a distinct, unqualified and unconditional promise to pay the existing indebtedness as to toll the statute of limitations. We think that we are not, on this appeal, warranted in giving consideration to this contention. Respondents are here upholding the judgment and have taken no appeal from any part of it. Since these parties have taken no appeal they may not attack the court's findings upon which, in the final analysis, the judgment which they maintain is correct is based. (*Klauber* v. *San Diego Street Car Co.*, 98 Cal. 105 [32 Pac. 876]; *Trevaskis* v. *Peard*, 111 Cal. 599 [44 Pac. 246]; *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service*, 217 Cal. 131, 137 [17 Pac. (2d) 712]; *Todd* v. *Temple Hospital Assn., Inc.*, 96 Cal. App. 42, 48 [273 Pac. 595]; *Kane* v. *Eastman*, 110 Cal. App. 753, 759 [295 Pac. 63].)

For the purposes of this opinion and without here deciding its correctness or incorrectness, we shall assume that appellant's attack upon the above-mentioned findings is not sustainable. This assumption brings us to a consideration of appellant's second contention which is that the trial court's finding that the Bay Trust Company did not, on February 11, 1931, accept a conveyance of the property subject to the mortgage of appellant and that the judgment which adjudged that the lien of appellant's mortgage is inferior to the interest of the Bay Trust Company is incorrect.

Closer analysis of the findings and legal conclusions and of the judgment demonstrates that the trial court arrived at the following result: Carl H. Heilbron acknowledged the indebtedness to appellant by his letters of October 9, 1929, which were written at a time when the debt was not barred by the statute of limitations. He thereby tolled the statute as to himself. He purported to act as his wife's agent in acknowledging the indebtedness but was not authorized so to act by her. Consequently the debt became barred as to her on September 1, 1931. At the time of trial, however, she ratified his action of October 9, 1929, in acknowledging the indebtedness and thereby waived her personal privilege of insisting upon the bar of the statute so that the cause of action on the note which she signed jointly with her husband revived as to her and appellant

was entitled to a personal judgment against her jointly with her husband. Although Carl H. Heilbron had tolled the statute on October 9, 1929, and thus commenced the running of a new period of four years within which the cause of action on the original promise would not be barred by the statute, nevertheless when he conveyed the property to the Bay Trust Company on February 11, 1931, this grantee did not accept the conveyance subject to appellant's mortgage and respondent Bay Trust Company acquired an interest in the property which was superior to appellant's mortgage. This conclusion is proper if the evidence produced during the trial of the action sustains the court's finding that although respondent Bay Trust Company had knowledge, both actual and constructive, of the existence, as an encumbrance against the property, of appellant's mortgage, nevertheless at the time of the conveyance of the property to said respondent this grantee did not accept the conveyance subject to the lien of appellant's mortgage.

The only evidence which was produced during the trial which bore upon the knowledge of the respondent Bay Trust Company of the existence of appellant's mortgage and of the lack of knowledge of the grantee that its grantor had tolled the running of the statute of limitations consists of the testimony of the witness D. C. Collier. This evidence showed, first, that the witness who was president of the Bay Trust Company, had knowledge of the existence of appellant's mortgage when he accepted the deed to the property from Carl H. Heilbron; second, that it never occurred to him that Heilbron might have tolled the statute of limitations and he did not therefore request Heilbron to permit him to see any letters which Heilbron had written to appellant; third, that his curiosity was nevertheless aroused as to why appellant had permitted the debt to run for four or five years without any payment having been made on it so that he inquired of Heilbron whether he had made any agreement or obtained any extension of time from appellant and received a negative answer to his inquiry; fourth, that he knew the obligation was not satisfied of record but did not address any inquiry to appellant to ascertain the status of the mortgage.

We think that this evidence is not sufficient to sustain the trial court's finding that respondent Bay Trust Company did not accept conveyance of the property subject to appellant's mortgage. The witness who was president of the grantee corporation and who testified that he took the conveyance "in the name of the Bay Trust Company" admitted that he knew of the existence of the mortgage and that it was not satisfied of record but that he made no effort to discover from appellant the status of its mortgage although he was sufficiently curious, in spite of the fact that it did not occur to him that Heilbron might have tolled the statute of limitations, to inquire of Heilbron whether "he had made any agreement or obtained any extension of time from them". "Under a similar state of facts, it was said of such a purchaser: 'He further knew, as a matter of law, that, under the statute of limitations, a renewal of the note was a possible event. He might, and as a prudent man he ought, before concluding his purchase, to have sought out Lent (the plaintiff) and inquired of him as to whether the note had been renewed in fact. If, on such application, Lent (the plaintiff) had told him that there had been no renewal, and if, thereupon, Chambers (the appellant), on the faith of the statement, had closed the trade and paid his money for the land, Lent (the plaintiff) would have been estopped from setting up the mortgage against the man whom his own false suggestions had misled. Not having pursued that course, however, Chambers (the appellant) must be understood to have bought and taken his conveyance subject to all hazards.' (*Lent* v. *Morrill*, 25 Cal. 492.)" (*Newhall* v. *Hatch*, 134 Cal. 269, 275 [66 Pac. 266, 55 L. R. A. 673].) To the same effect are the decisions in *Craig* v. *Dinwiddie*, 77 Cal. App. 681 [247 Pac. 516], and *Wood* v. *Willey*, 136 Cal. App. 197 [28 Pac. (2d) 367].

It must be obvious that, if Carl H. Heilbron acknowledged the debt prior to the time it was barred by the statute of limitations and later conveyed the mortgaged property to a purchaser who accepted the conveyance with both actual and constructive knowledge of the existence of the mortgage and that it was not satisfied of record and who nevertheless made no inquiry of the mortgagee to as-

certain whether Heilbron had taken any action to toll the statute, the purchaser may not successfully claim that the debt and its incident, the mortgage, are barred as to him. ■ Nor does the undisputed fact that the mortgaged property was community property of Carl H. Heilbron and Katherine Matilda Heilbron and the latter had not authorized her husband to acknowledge the debt for her have the effect of enabling the purchaser to take the mortgaged premises free from the mortgage lien. The record herein fails to show that respondent Katherine Matilda Heilbron joined with her husband in the execution of the deed, whereby the property was conveyed to respondent Bay Trust Company. However, if it be assumed that she did so join, the only interest which she could convey to the Bay Trust Company was the interest which she owned which has been uniformly defined to be an expectancy in the property. Certainly her conveyance of such an interest could not work the curious and inequitable result that appellant's mortgage lien would be entirely eradicated and the purchaser who accepted the conveyance without making any inquiry of the mortgagee would be entitled to have its title to the land quieted against the lien of the mortgage which was given to secure the payment of an admittedly outstanding indebtedness. Yet this is exactly the result which has been achieved by the judgment herein. It necessarily follows that a proper application of the legal principles which are pertinent to the situation disclosed by the record demands a reversal of the judgment.

Those portions of the judgment from which this appeal has been taken are therefore reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1935.