[Civ. No. 1867. Fourth Appellate District.—August 3, 1937.]

VALLEY MOTOR LINES, INC. (a Corporation), Petitioner, v. HARRY B. RILEY, as Controller, etc., Respondent.

James J. Broz for Petitioner.

U. S. Webb, Attorney-General, and James J. Arditto, Deputy Attorney-General, for Respondent.

MARKS, J.—This is an original proceeding in this court to compel respondent controller of the state to credit petitioner with, or refund to it, an alleged overpayment of taxes, paid during the calendar year 1935. Respondent has appeared by demurrer and answer.

Petitioner is a corporation engaged in the business of transporting freight between fixed termini by motor trucks over the public highways of the state under certificates of public convenience and necessity issued by the Railroad Commission of the state of California.

Prior to January 1, 1935, petitioner was required to pay five per cent of all its gross income as a tax in lieu of all other taxes and assessments. (Sec. 15, art. XIII, Const., adopted Nov. 2, 1926; secs. 15 and 15½, art. XIII, Const., adopted June 27, 1933; sec. 3664aa, Pol. Code.) (See, also, sec. 3669, Pol. Code.) The tax for a fiscal year was based on the gross income of the preceding calendar year, and might, on permission granted, be paid in two instalments. After January 1, 1935, petitioner's taxes were levied and collected under the California Vehicle Transportation License Tax Act. (Stats. 1933, p. 928, as amended; Stats. 1935, p. 2176.) We will refer to this act as the Vehicle License Tax Act. Petitioner secured permission to pay its tax for the fiscal year 1934–1935 in two instalments. It paid its first instalment on August 13, 1934, and its second, amounting to $5,264.61, on February 2, 1935. No question is raised as to the correctness of the amounts of these payments.

After January 1, 1935, petitioner made its monthly returns and payments under the Vehicle License Tax Act. During the calendar year 1935 petitioner paid to the state three per cent of its monthly gross receipts from its operations in the

total sum of $9,192.82. In addition it paid during the same year motor vehicle license tax, $10,385.44; city and county personal property tax, $1,618.97; real property tax, $893.19; municipal licenses or penalty tax, $104.22, or a total of $22,194.64, subject to a deduction of $160.30, leaving the net payments during the calendar year 1935 at the sum of $22,034.34. It does not conclusively appear from the record that the payment of the second instalment of the tax for the fiscal year 1934–1935 in the sum of $5,264.61, paid on February 2, 1935, is included in any of these items. However, as counsel argue the propriety of including this amount in the taxes paid during the calendar year 1935 as a basis for a claim for a credit or refund, we assume that it is included in the item of "Motor Vehicle License Fees Paid, $10,385.44."

Petitioner's gross income from its operations during the calendar year 1935 was $306,427.47. Five per cent of this income amounted to $15,321.37. It filed a claim with the State Board of Equalization for $6,873.09 which it maintained was an overpayment by it under the following provisions of section nine of the Vehicle License Tax Act:

"If during any calendar year, any operator pays hereunder license taxes which together with all other taxes and licenses, state, county and municipal, upon the property of such operator used exclusively by him in his business of transporting persons or property for hire or compensation over the public highways of this state, exceed five per cent of the gross receipts from operations of such operator in this state for such calendar year, the difference between five per cent of such gross receipts and the total amount of such taxes and licenses paid during the calendar year shall be credited on any license taxes thereafter due from such operator under this act, and the balance shall be refunded to such operator; . . . "

The board made the adjustment of $160.30 which we have mentioned, allowed petitioner a credit of $1448.18 which it has received, and disallowed $5,264.61 of the claim which is the exact amount of the payment made on February 2, 1935, the second instalment of taxes for the fiscal year 1934–1935.

It is evident that the principal ground of controversy between the parties here is due to the following: That prior to January 1, 1935, the taxes of petitioner were computed on the basis of the gross income for a calendar year, and were

the taxes of the fiscal year ending on June 30th; that after that date, while they were still computed on the basis of the gross income for a calendar year they were paid monthly during such year, and the fact that petitioner secured permission to pay its taxes for the fiscal year 1934–1935 in two instalments, and paid the second instalment on February 2, 1935, which was during the last half of the fiscal year 1934–1935 and the first half of the calendar year 1935.

The demurrer of respondent presents the question of the proper parties respondent in this proceeding. He contends that there is no legal duty resting upon him to make the credit or refund demanded by petitioner until the claim therefor has been approved by the State Board of Equalization and the State Board of Control. He argues that these boards are necessary parties respondent; that if petitioner establishes that the claimed overpayment was actually made these boards should be ordered to approve the claim and direct the credit or repayment; that he would then be ordered to issue a receipt for the credit and authorize the repayment of any surplus of the overpayment remaining after such credit.

Section fifteen of the Vehicle License Tax Act provides in effect that matters pertaining to refunds of taxes be governed by section 3669 of the Political Code. That code section contains the following:

"Whenever any taxes, . . . shall have been paid more than once, or shall have been erroneously or illegally collected, . . . the State Board of Equalization shall certify to the State Board of Control the amount of such taxes, penalties, or costs, collected in excess of what was legally due, from whom they were collected or by whom paid, and if approved by said Board of Control, the same shall be credited to the company or person to whom it rightfully belongs, at the time of the next payment of taxes."

Section 663 et seq. of the Political Code provide for a board of control and define its powers and duties.

It would seem clear that where an overpayment of vehicle taxes has been made a claim must be filed with the State Board of Equalization which must make an investigation of and pass upon the legality of the claim; that if it is found valid in whole or in part it must be certified to the State Board of Control. The second step in the proceeding is action

by the State Board of Control on the findings and recommendations of the State Board of Equalization. If they are approved by the State Board of Control that body, as the third step, refers the matter, with its approval, to the State Controller, who thereupon issues the receipt for the credit and a warrant for the repayment, if any. It would seem that there is no duty resting upon the controller to act and issue the receipt for the credit and the warrant for the overplus, if any, until the two boards have acted.

In the case of *Boggs* v. *Jordan,* 204 Cal. 207, at 216 [267 Pac. 696], it is said:

"A *mandamus* proceeding in this state is an independent proceeding, having for its purpose the compulsion of an act which the law specially enjoins as a duty resulting from an office, trust, or station. (Sec. 1085, Code Civ. Proc.; *Sheehan* v. *Board of Police Commrs.,* 188 Cal. 535 [206 Pac. 70]; *Perrin* v. *Honeycutt,* 144 Cal. 87, 90 [77 Pac. 776].)"

A somewhat analogous situation to the one we are considering was before the court in the case of *Bandini Estate Co.* v. *Payne,* 10 Cal. App. (2d) 623 [52 Pac. (2d) 959, 960]. There the petitioner sought by writ of mandate to compel the auditor and tax collector of Los Angeles County to change the amounts of the taxes levied against certain parcels of real property and accept reduced amounts in payment of such taxes. In speaking of that situation the court said:

"The granting of a peremptory writ of *mandamus* in this proceeding was properly denied. The petition fails to state a cause of action. The application for the writ is directed only to the Auditor and Tax Collector of Los Angeles County, neither of whom has any legal duty or authority to fix or change the valuations of property or the amounts of taxes to be levied thereon. A writ of *mandamus* will not issue to compel one officer to perform the duties imposed by law upon another officer. A writ of *mandamus* will issue only against a person, officer or inferior tribunal 'to compel the performance of an act which the law specially enjoins' upon such individual or officer."

The State Board of Equalization and the State Board of Control are necessary parties to this action. They should be permitted to defend any action taken by them on this claim. If they have not acted in accordance with the law they should be ordered to conform to the law. If they should be ordered

to act, the controller can, in the same proceeding, be ordered to perform his duty. As the petition before us does not show a plain, present, lawful duty on the part of respondent to make the credit and draw the warrant for the overpayment of taxes, if any, it does not state facts sufficient to state a cause of action and respondent's demurrer must be sustained.

In support of its proceeding here petitioner cites the case of *Pioneer Express Co.* v. *Riley*, 208 Cal. 677 [284 Pac. 663], and asserts that case is authority for making the controller the sole respondent in this case. The precise question we are considering does not seem to have been passed upon in that case. The facts of the two cases render them easily distinguishable.

The Pioneer Express Company conducted a general freight transportation business between San Jose and San Francisco. Gibson's Express Incorporated conducted a pick-up freight business in San Jose and other towns and was a business feeder for the Pioneer Express Company. That company paid its tax on the gross business done by it in the year 1928. The state maintained it should also pay on the gross business done by Gibson's Express Incorporated. The Supreme Court found that the Pioneer Express Company had paid its taxes in full and that it was not liable for any tax on the earnings of the other corporation. It ordered the controller to issue the receipt. It should be observed that as soon as it was determined that the Pioneer Express Company had paid its taxes in full it followed as a natural result that it became the clear legal duty of the controller to issue the receipt. No action was required by any other person or board. A credit or refund of taxes paid was not involved in that case. In the instant case action by the State Board of Equalization and the State Board of Control are made by law a prerequisite to action by the state controller before a credit or refund of an overpayment of taxes can be made. Therein lies the distinction between the two cases.

The attorney-general has conceded that a petition for a writ of mandate is an appropriate remedy in a case of this nature. We have not inquired into and do not pass upon that question.

We have referred to the collections made under the Vehicle License Tax Act as taxes. This opinion does not demand nicety of definition in that respect. By referring to such

collection as taxes we do not intend to infer that they may not be excise taxes imposed for the use of the public highways of the state.

The demurrer is sustained, the alternative writ is discharged and the petition is dismissed without prejudice to the institution of another action or proceeding.

Barnard, P. J., and Jennings, J., concurred.