382

[L. A. No. 26280. In Bank. Apr. 4, 1963.]

HERBERT LERNER, Plaintiff and Appellant, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Defendants and Respondents.

Hugh R. Manes for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, Clarence H. Langstaff, Assistant County Counsel, John K. Carmack and Jerry F. Halverson, Deputy County Counsel, for Defendants and Respondents.

TOBRINER, J.—We hold here that neither the statute of limitations nor laches bars plaintiff Lerner's right to reinstatement as a permanent teacher in the Los Angeles City High School District. That board's automatic termination of his certificate rested exclusively on the state board's revocation under Education Code section 12756. Ultimately the state board reversed its action as illegal under court decision. The interval of time so involved covered a period, commencing with the original termination by the city board, greater than

that of the applicable statute of limitations. Since Lerner, however, could not bring a successful action against the city board until the state board restored his certificate, the statute should not begin to run until such restoration removed the original basis for Lerner's dismissal and compelled the city board either to reinstate Lerner or to take an independent adverse position. Although, as the city board contends, Lerner could have sued both boards at the time of the original termination, any holding that the statute commences to run from that date would engender harsh and anomalous results in this and other analogous cases. Indeed, in urging that position the city board cannot overcome Lerner's defenses of estoppel and waiver.

We describe the history of the proceedings.[1] In 1947 the Los Angeles City Board of Education (hereinafter termed "the city board") employed Lerner as a substitute high school teacher. On July 10, 1948, Lerner was arrested in Los Angeles on a charge of lewd vagrancy (Pen. Code, § 647, subd. 5). On arraignment he pleaded not guilty. Lerner alleges that, although innocent, he feared that a publicized trial would destroy his teaching career. His attorney informed him that if he pleaded guilty, his conviction, after six months, could be expunged from the record.[2] Thus on July 15, 1948, Lerner pleaded guilty, the proceedings were suspended without imposition of sentence, and the court granted Lerner probation upon his payment of a $100 fine. On January 5, 1949, pursuant to a motion under Penal Code section 1203.4, the court set aside the plea of guilty, entered a plea of not guilty, and dismissed the case.

Meanwhile, on September 1, 1948, the city board employed Lerner as a probationary teacher; and, on July 1, 1950, as a permanent teacher.[3] On December 10, 1954, following the en-

[1] In the instant case the Los Angeles City Board of Education, its members, and the superintendent of schools of the Los Angeles City High School District are defendants and respondents. The State Board of Education, its members, and the State Superintendent of Public Instruction were also named as defendants, but moved for judgment on the pleadings. The motion was granted. No appeal was taken from that judgment.

[2] At that time Education Code section 12011.5 (now § 12911), nullifying expungement of sex offense convictions of teachers, had not yet been enacted.

[3] Apparently the board did not know in either instance of the 1948 court proceeding. When applying for his teaching credential upon both occasions, Lerner represented that he had not been convicted of any crime, believing this would be the effect of the expungement.

actment of Education Code section 12756, the state board summarily revoked Lerner's teaching credential. After notification of the revocation by the state board, the city board, on December 14, 1954, solely because of the revocation, terminated Lerner's employment.

On July 6, 1955, Lerner wrote to the Attorney General inquiring as to the procedure necessary to obtain reinstatement. The Attorney General forwarded Lerner's letter to the state board. On July 26, the state board replied that for the reasons stated in a cited opinion of the Attorney General, ''neither the Attorney General, the State Board of Education, nor any other official has any jurisdiction or authority to restore your credential to you nor may any California school district employ you.'' About this time Lerner consulted an attorney, who communicated as to Lerner's reinstatement with persons in the office of the city board, the Attorney General, and the state board. On August 12, 1955, the state board replied to the attorney, stating in substance that no person whose teaching credential had been revoked for conviction of a sex offense could obtain restoration of his credential. After further research the attorney finally advised Lerner that as a practical matter, there was ''no remedy . . . available.''

Lerner made no further attempt to obtain reinstatement until June 11, 1956, when he wrote a letter to the Governor. On June 21 the state board replied to Lerner stating that his letter to the Governor had been referred to the board; that the board's files reflected that Lerner had pleaded guilty to the offense of lewd vagrancy; that under the law the board was required to revoke the teaching credential of anyone who has been convicted of that offense; that an ''expungement'' under section 1203.4 of the Penal Code was ''ineffective''; and that the problem was ''exhaustively discussed'' by the Attorney General in an opinion, a copy of which was enclosed.

Some time later, on June 9, 1958, Lerner received a letter from the state board, enclosing a copy of the decision in the case of *Fountain* v. *State Board of Education* (1958) 157 Cal. App.2d 463 [320 P.2d 899], which held invalid the summary revocation of Fountain's credential under Education Code section 12756 upon a retroactive application of that section to Fountain's prior conviction of a sex offense. The letter further advised Lerner, however, that ''conviction of a sex offense, irrespective of the date of conviction, is evidence

of immoral conduct and of unfitness for service, each of which is a ground for revocation or denial of a credential"; and that the state board construed the *Fountain* decision "as requiring an administrative hearing for the revocation or denial of a credential involving a person convicted of a sex offense prior to July 2, 1952."

On July 2, 1958, the state board reinstated Lerner's teaching credential. By letter of July 24, Lerner requested the city board to reinstate him as a teacher in the city system. The city board denied the request on August 21, 1958, saying "Your employment was terminated by operation of law. Specifically the State Department of Education revoked your credential on December 10, 1954, which, under the Education Code, expressly prohibited this Board of Education from continuing your employment in a certificated position."

Thereafter, on August 24, 1958, the state board served upon Lerner an accusation in which it sought to revoke his credential on three grounds: performance of an act involving moral turpitude; conviction, on the plea of guilty, of such immoral conduct; and concealment of such conviction with intent to deceive and defraud in applying for renewal of his teaching certificate in 1949 and 1954. After the board's hearing, the hearing officer submitted his proposed decision, setting forth his findings that the charges were untrue. On April 16, 1959, the state board adopted the proposed decision and dismissed the accusation.

Meanwhile on December 10, 1958, Lerner commenced this suit. He asked for a declaration as to his right to be reinstated "as an employee teacher of [the] Local Board in the Los Angeles High School District." He alleged that as a "result of the revocation of [his] life diploma by the . . . State Board, [the] Local Board . . . refused . . .to allow [him] to teach pursuant to his agreements, although on or about July 24, 1958 [he] notified [the] Local Board that his life diploma had been reinstated. . . ."

Following the state board's dismissal of the accusation on April 16, 1959, Lerner notified the city board of that decision and renewed his request for reinstatement. The city board replied that the findings of the state hearing officer were not "sufficiently explicit" to enable the city board to "resolve all doubts as to the non-existence of the events which led to [the] conviction, particularly in view of the fact that the most important testimony—that of the arresting officer who is now

deceased—was not available at [the hearing] . . . [I]t is our conclusion that you should not be re-employed by the Los Angeles City School District."

Then, on June 25, 1959, Lerner filed a supplemental complaint alleging the fact of the administrative hearing before the state board, its result, and the continued refusal of the local board to reinstate him. The prayer sought a declaration of Lerner's right to reinstatement to his teaching position and the recovery of unpaid salary. At the trial Lerner waived his demand for "loss of salary" and instead demanded, in effect, that if reinstated he be paid a salary based upon the teaching experience which he would have acquired if his employment had not been terminated.

The case, as we have indicated, poses two issues: first, whether the statute of limitations bars Lerner's action, and, second, whether his own alleged laches blocks him. We shall consider each of these issues separately.

Turning to the first issue, we cannot doubt but that the period prescribed for the commencement of an action upon a liability created by statute, other than a penalty or forfeiture, constitutes three years. (Code Civ. Proc., §§ 335 and 338, subd. 1.) Since Lerner's claim to continued employment as a teacher derives from the tenure laws (Ed. Code, §§ 13304-13338) it necessarily rests upon a liability allegedly created by statute. (*Baldwin* v. *Fresno City etc. School Dist.* (1954) 125 Cal.App.2d 44, 51 [269 P.2d 942]; *Ingram* v. *Board of Education* (1940) 36 Cal.App.2d 737, 739 [98 P.2d 527].)

The equitable nature of Lerner's declaratory proceeding does not alter the applicability of the pertinent provision. (*Leahey* v. *Department of Water & Power* (1946) 76 Cal. App.2d 281, 286-287 [173 P.2d 69].) In *Troeger* v. *Fink* (1958) 166 Cal.App.2d 22 [332 P.2d 779], the court said at pages 28-29: "Generally, the running of an applicable statute of limitations will also bar equitable relief. [Citations.] . . . [I]t is settled that where the statute of limitations has barred any right to 'coercive' relief, declaratory relief designed to vindicate the same asserted right is likewise barred."

Having determined that the three-year period of limitation governs, we must resolve the principal question of whether Lerner's cause of action accrued against the city board at the date of termination of his employment, Decem-

ber 14, 1954, as the trial court found, or only after the restoration of his teaching credential by the state board on July 2, 1958. Lerner actually brought the action on December 10, 1958, approximately four years after the termination of his employment but less than six months later than the restoration of his teaching credential. For the reasons hereinafter set forth we have concluded that the cause of action could not have accrued against the local board prior to the date of the restoration of his credential by the state board because the revocation of his certification by the state board clearly prevented the successful consummation of an action against the local board. ▉▉▉ Nor do we believe, as we shall explain, that the availability to Lerner of a possible action against both the city and state boards in December 1954 served to start the running of the statute in favor of the city board as of that date.

▉▉▉ Lerner's effective cause of action arose in July 1958 when, despite the restoration of his credential, the city board refused to reinstate him and changed its position to a reliance upon statutory provisions for dismissal without affording him the requisite notice and hearing. The city board had terminated[4] Lerner's employment on December 14, 1954, solely on the ground of ineligibility because of the revocation of his state teaching credential. The state board later, however, had recognized that it had revoked Lerner's credential illegally.[5] Thus, when the state board reinstated Lerner's credential as though never revoked, the state board removed the basis for the city board's termination of his employment; the city board in turn became obligated to reinstate him. (*Matteson* v. *State Board of Education* (1943) 57 Cal.App.2d 991 [136 P.2d 120].) ▉▉▉ The city board could neither have rein-

[4] ''Termination'' means severance of a teacher's employment by operation of law; here, the revocation of appellant's teaching credential, as distinguished from ''dismissal,'' which means discharge upon statutory grounds, and, unlike termination, requires notice and hearing (Ed. Code, §§ 13403-13441).

[5] In February 1958, the appellate court in *Fountain* v. *State Board of Education, supra* (1958) 157 Cal.App.2d 463, held that the legislation involved here (Ed. Code, § 12756, now Ed. Code, § 13207) was not intended to apply to persons convicted of a sex offense prior to the effective date of the statute. Accordingly, after hearing was denied by this court (April 1958), on June 9, 1958, the state board reinstated Lerner's teaching credential. Indisputably under this case and the later case of *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167 [18 Cal. Rptr. 369, 367 P.2d 865], Lerner's teaching credential could not be validly revoked without a hearing.

stated nor employed Lerner (Ed. Code, §13251), prior to the state board's restoration of his teaching credential.

Refusing to reinstate Lerner, the city board insisted upon the propriety of the "termination" of his employment because of the 1948 conviction for immoral conduct and awaited the conclusion of the state board's statutory proceedings on this issue. When, however, the state board finally dismissed these proceedings, the city board still refused reinstatement, invoking the statutory provision for dismissal on the grounds of moral unfitness (Ed. Code, § 13403). As we have stated, the city board failed, however, to comply with the prerequisites of notice and a hearing (Ed. Code, §§13404-13441).[6] *Hence the liability of the city board accrued at the time it so changed its position on or after July 2, 1958, the date of the state board's restoration of Lerner's teaching credential.*

Since Lerner's cause of action against the city board could not have accrued unless and until the state board restored his credential, such favorable action of the state board constituted a condition precedent to effective action against the city board. A writ of mandate against the city board could not, of course, have issued to command the reinstatement of Lerner until the state board granted his credential. (*California Highway Com.* v. *Riley* (1923) 192 Cal. 97, 112 [218 P. 579].)

Many decisions have held, in the words of Justice Traynor in *Dillon* v. *Board of Pension Comrs.* (1941) 18 Cal.2d 427, 431 [116 P.2d 37, 136 A.L.R. 800], "that the running of the statute of limitations is suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights." The cases likewise express the same con-

---

[6]The city board contends that if Lerner is given a hearing, Education Code section 13433 will prevent the introduction at that hearing of evidence relating to Lerner's 1948 conviction. Although section 13433 provides that "no judgment permitting the dismissal . . . of any employee shall be . . . based on . . . evidence . . . relating to matters occurring more than three years prior to the filing of the complaint," the application of this section to the unusual facts of the present case is not clear. Lerner concedes that "it could be tenably argued that if petitioner is to be reinstated as if never terminated, then the rights of the respondent Board to introduce evidence relating to that period is similarly 'reinstated' as of that date." In any event, since the bar of section 13433, if applicable, would have run against the city board by July 15, 1951 (three years after Lerner's conviction), the city board's disability cannot be charged to any delay by Lerner in seeking legal relief.

cept in stating that the action does not accrue so long as the period of prevention continues. (See 1 Witkin, California Procedure, Actions, § 165, p. 674.)

In *Dillon* plaintiff's right to a pension depended upon the favorable action of the board of pension commissioners; the court accordingly noted that since "action by the board must precede court proceedings to obtain a pension, a claimant who has applied to the board cannot sue for the pension while the claim is under consideration by the board." (P. 430.) The court held that the statute barred the action because it had been brought more than three years after the death of plaintiff's husband "*exclusive of the period of the board's deliberations.*" (P. 431; emphasis added.) Following *Dillon, Skaggs* v. *City of Los Angeles* (1954) 43 Cal.2d 497 [275 P.2d 9], grants relief to the applicant for a retirement pension since he filed his action "within the three-year period, exclusive of the period of the board's deliberations." (P. 500.)

In accord with this principle, the court in *County of Santa Clara* v. *Hayes Co.* (1954) 43 Cal.2d 615 [275 P.2d 456], holds that the time consumed in the judicial determination of the invalidity of a defectively published charter should be excluded from the period during which the statute of limitations otherwise would have run against the complaining county's action for breach of contract. Likewise, *Wells* v. *California Tomato Juice, Inc.* (1941) 47 Cal.App.2d 634 [118 P.2d 916], holds that the time limitation "provided by section 1190 of the Code of Civil Procedure should be extended during the period of time necessarily required to appoint the trustee in bankruptcy and to procure the consent of the federal court to institute and maintain the action." (P. 637.) In *Burns* v. *Massachusetts etc. Ins. Co.* (1944) 62 Cal.App.2d 962 [146 P.2d 24], the court explains that since a guardian's appeal from an order settling his accounts prevented suit against his sureties, such appeal tolled the limitation on an action against the surety. (Pp. 970-971.)

Finally, *Lee C. Hess Co.* v. *City of Susanville* (1959) 176 Cal.App.2d 594 [1 Cal.Rptr. 586], following *Hayes,* rules that the contractor's action for breach of contract against the city did not encounter the bar of the statute during the period of the separate legal adjudication of the issue of the city's wrongful rescission of the contract. The court states: "The running of the statute of limitations was suspended during the pendency of the validation proceedings, hence appellant had no

cause of action until it was finally judicially determined that respondent had wrongfully breached its contract." (P. 598.)

 Although the city board would distinguish the *Hess* case upon the ground that plaintiff there was "undertaking proceedings to test the validity of the contract," while here the state board voluntarily gave Lerner relief, the means of adjustment should not affect the running of the statute. The difference in the *method* whereby Lerner obtained relief against the state board, its voluntary rather than coercive procurement, should not in some obscure manner serve to protect the city board.

Nor do the cases cited by the city board apply to the exact situation before us. Thus *People* v. *California Safe Deposit etc. Co.* (1919) 41 Cal.App. 727, 731 [183 P. 289], cited by the city board, does not control here because there the nonappointment of the receiver, which was claimed to toll the statute, did not lie beyond the effective power of plaintiff; the case typified the situation "where plaintiff's right of action depends upon some act to be performed *by him* preliminarily to commencing suit." (P. 731; emphasis added.) In the instant case the requisite precedent action did not lie within the power of Lerner but with the state board. The same principle in cases cited by the city board accounts for the usual inability of a plaintiff to suspend the statute if the delay is due to plaintiff's ignorance of his cause of action (*First National Bank* v. *Thompson* (1943) 60 Cal.App.2d 79 [140 P.2d 75]; *Medley* v. *Hill* (1930) 104 Cal.App. 309, 311 [285 P. 891]; *Lambert* v. *McKenzie* (1901) 135 Cal. 100 [67 P. 6]) or his neglect to "make the demand until it suit[s] his convenience so to do." (*Wittman* v. *Board of Police Comrs.* (1912) 19 Cal.App. 229, 232 [125 P. 265].)

 While we thus conclude that the statute did not run against Lerner until the state board restored his credential and the city board assumed a new position for terminating his employment, the city board argues that Lerner, following the pattern of plaintiff in *Fountain* v. *State Board of Education, supra* (1958) 157 Cal.App.2d 463, could in 1954 have brought a mandamus action against both boards. From this premise the city board contends that since Lerner possessed a cause of action against it in 1954, the statute of limitations runs from that date. As we shall explain, two propositions defeat this contention: first, the possibility of joinder of the city board in an action against the state board occurs only be-

cause of the liberality of rules of pleading, and the positing of the commencement of the statutory period upon such possibility would be unrealistic and onerous; second, the city board, in belatedly taking such a position adverse to Leruer cannot avoid Lerner's defenses of waiver and estoppel.

No cause of action against the city board, independent of the state board, reposed in Lerner in 1954. If Lerner had then filed an action, the city board could have successfully asserted in defense its obligation to discharge Lerner upon the revocation of his credential. If, to defeat that argument, Lerner had attacked the legality of the revocation, he would have been compelled to join the state board in the action. (*Valley Motor Lines* v. *Riley* (1937) 22 Cal.App.2d 233, 238 [70 P.2d 672]; but see *Tape* v. *Hurley* (1885) 66 Cal. 473 [6 P. 129].)

Although Lerner could still have included the city board as a proper defendant in that litigation, such inclusion would simply have resulted from the liberal rules of joinder of defendants in mandamus actions. These rules enable a plaintiff to sue not only that board or officer whose inaction defeats his rights, but also other officials whose cooperation is essential to full relief. (See *Barber* v. *Mulford* (1897) 117 Cal. 356 [49 P. 206]; *Valley Motor Lines* v. *Riley, supra.*) These officials constitute proper defendants even though they are willing to accede to the applicant's demands but do not do so solely because of the refusal of an adverse or noncomplying defendant. Thus, because of these rules of joinder, the plaintiff, in a single action, may obtain a judicial decree granting him the full relief against all possible defendants.

To hold that because a complying official *may* be named as a defendant, the statute of limitations begins to run in his favor as soon as the cause of action originates against a noncomplying official would engender anomalous results. Cases may arise in which a plaintiff does not name an apparently compliant official because of the claimant's inadvertence, his reliance upon an assurance of cooperation, or his innocent assumption that an official will perform his legal duty. Even if suit were brought immediately, the period of time extending from the plaintiff's original cause of action against the unwilling or noncooperative official to the date of a judgment might well exceed three years. If we were to date the statutory period from the plaintiff's primal right of action against such official, an entirely unexpected refusal to perform a

mandatory legal duty by some other unnamed official would serve as an absolute bar to a plaintiff's claim. Even though this refusal were based on entirely new grounds, and not manifested until after the three-year period had run, no redress would be available.[7]

Other cases may arise in which a plaintiff sues promptly but asks only such relief as the noncompliant officials can be compelled to render. For example, in 1954 Lerner could have brought a suit asking only that his credential be restored. Since no action by the city board is essential to that limited relief, the board would not be a necessary party. (See *Palmer* v. *Fox* (1953) 118 Cal.App.2d 453, 458 [258 P.2d 30] [by implication]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 314 [196 P.2d 20] [dictum]; 55 C.J.S., Mandamus, § 252, p. 471 and cases cited nn. 53 & 54.) Knowing that if his credential were restored the city board would be obliged to reemploy him, and acting upon the basis of the legal presumption that officials will perform their duty unless they manifest a contrary intention (see *County of Tulare* v. *City of Dinuba* (1928) 205 Cal. 111, 117 [270 P. 201]; *Metropolitan Life Ins. Co.* v. *Rolph* (1920) 184 Cal. 557, 562 [194 P. 1005]; *Palmer* v. *Fox, supra*; *Brown* v. *Superior Court* (1925) 70 Cal.App. 732, 737 [234 P. 409]), Lerner might well believe restoration an adequate remedy. To frustrate such expectation and to allow apparently cooperative officials to refuse to perform their obligations and yet claim complete immunity from suit would be to impose an unanticipated and onerous hardship upon a plaintiff.

Finally, there may be cases, like the instant one, in which a plaintiff does not file his action within the statutory period but the noncomplying official waives, or is estopped from, the assertion of that defense. As we shall point out subsequently, the complying official may be bound by such waiver or estoppel if the complying and noncomplying officials are found to be in privity. Determination of privity, however, should not alone be conclusive. Any reliance by plaintiff which would support an estoppel against the noncompliant official in all likelihood will include a tacit reliance that the apparently cooperative official will not reverse his position and re-

[7]As long as the complying official bases his refusal to act solely upon the inaction of the noncomplying official, he will be indirectly protected by the running of the statute of limitations in favor of the noncomplying official, since the latter is a necessary party to any action for relief.

fuse compliance. Likewise, any waiver by the noncompliant official to extend or abandon the statute must subsume that the statute will not be invoked by some *other* official. Indeed, the waiver or estoppel may result from a determination by the noncomplying official that the public interest would best be served by not invoking the technical defense of the statute (as in the instant case; see also *Mitchell* v. *County Sanitation Dist.* (1957) 150 Cal.App.2d 366 [309 P.2d 930]). If so, such a determination should not be frustrated by its unexpected rejection by officials who have hitherto taken no independent position.

Thus our analysis of these possibilities yields the conclusion that the statute of limitations should not begin to run in favor of an official in such a situation until he assumes an independent position adverse to the plaintiff. The statute begins to run if the official *changes his position* and indicates his intention to deny relief *independently* of action by other officials. Alternatively, the period of limitation commences if, as a result of a change of position by, or judgment against, the noncompliant official, the originally compliant official can no longer justify his refusal to act by reference to the noncompliant official's refusal, and thus his further inaction must be inferred to rest on independent grounds.

Applying these principles in the present case, we conclude that the statute began to run in favor of the city board on July 2, 1958, when the state board's restoration of Lerner's credential compelled the city board either to reinstate Lerner or to take an independent adverse position. Only by such a conclusion can we avoid the negation of the legal principle that one is entitled to assume that public officials will perform mandatory duties until they have manifested a contrary intent.

Even assuming, however, that the change in the city board's position in 1958 did not create a new cause of action against it, the board still confronts both a waiver and an estoppel as to its assertion that the statute began to run against Lerner in December 1954. ▮▮▮ We believe that the action of the state board in restoring Lerner's credential without raising the defense of the statute constitutes a waiver of the statute. ▮▮▮ The state board's advice to Lerner that it lacked jurisdiction or authority to restore his credential, and that no school district could legally employ him, largely induced Lerner's inaction and would estop the state board from later

reliance upon the statute. Furthermore, we shall point out that the privity between the city and state boards is such that the estoppel and waiver of the state board bind the city board.

That an estoppel may bar an administrative board from raising the statute of limitations follows from our ruling in *Tyra* v. *Board of Police etc. Comrs.* (1948) 32 Cal.2d 666 [197 P.2d 710]. In that case the Long Beach Board of Police and Fire Commissioners incorrectly advised plaintiff, an injured fireman, that he could not obtain a pension so long as he received workmen's compensation benefits. After the limitation period had run, the plaintiff sought mandate to compel payment of the pension. The court stated that: "The delay charged to the plaintiff was induced by the erroneous position and advice of the defendants and their attorneys. They may not therefore now properly interpose the defense as a bar to the plaintiff's delayed course of action." (Pp. 670-671; see also *Adams* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 487 [116 P.2d 75].)

The estoppel binds not only the state board, but also those in privity with it. (*Roper* v. *Smith* (1919) 45 Cal. App. 302, 306 [187 P. 454].) So long as no conflict of interest arises between the privies,[8] the waiver of the statute also binds the privy of the waiving party. (See *Bemer* v. *Bemer* (1957) 152 Cal.App.2d 766, 773 [314 P.2d 114] [dictum]; *Goldberg, Bowen & Co.* v. *Demick* (1926) 77 Cal. App. 535, 540 [247 P. 261] [dictum]; *Glenn* v. *McDavid* (1942) 316 Ill.App. 130, 136-137 [44 N.E.2d 84, 87].[9])

---

[8]In cases in which a conflict of interest does exist, the waiver may not be binding on the privy. See generally 31 Cal. Jur. 2d, Limitation of Actions, § 206. For example, a waiver by a debtor will not bind a surety. (*Easton* v. *Ash* (1941) 18 Cal.2d 530 [116 P.2d 433].) In the present case, however, two agents of the same government, each representing the public interest, are involved.

[9]Other cases have extended the waiver to bar privies from raising the defense, but have avoided discussing the concept of "privity" and confined their discussion to the particular relationship before them. (*Dexter* v. *Pierson* (1931) 214 Cal. 247 [4 P.2d 932] [subsequent mortgagee with notice of prior mortgagee's waiver barred]; *Brownrigg* v. *deFrees* (1925) 196 Cal. 534 [238 P. 714] [administratrix barred by decedent's contractual waiver]; *Glassell* v. *Glassell* (1905) 147 Cal. 510 [82 P. 42] [executor barred by waiver in will]; *Carberry* v. *Trentham* (1956) 143 Cal.App.2d 83 [299 P.2d 966] [wife barred by husband's waiver]; *Estate of Hilde* (1950) 101 Cal.App.2d 41 [224 P.2d 765] [administratrix barred by decedent's contractual waiver]; *Union Title Ins. Co.* v. *Maytag Co.* (1934) 2 Cal.App.2d 48 [37 P.2d 512] [successive owners of land]; *Andre* v. *Stilson* (1940) 37 Cal.App.2d 334 [99 P.2d 557] [same].)

The answering contention of the city board that it avoids the waiver and estoppel because it is "independent" of the state board misconceives the concept of privity. Privity does not depend upon whether the parties constitute independent legal entities; successive owners of property often assume the relationship of privity although they are independent legal persons. "Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right." (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461], quoting 30 American Jurisprudence 957 [now 30A American Jurisprudence 451].) Thus the courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government.[10]

 Not only does the city board here serve as an agency of the state (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574]) but also, at the time of the restoration of Lerner's credential the city board occupied a totally dependent and subordinate position to the state board, basing its decisions entirely upon the state board's revocation of the cre-

---

[10]Davis, Administrative Law, section 18.05; see *Sunshine etc. Coal Co.* v. *Adkins* (1940) 310 U.S. 381 [60 S.Ct. 907, 84 L.Ed. 1263] [privity found between National Bituminous Coal Commission and Collector of Internal Revenue]; *Tait* v. *Western Md. Ry. Co.* (1933) 289 U.S. 620, 627 [53 S.Ct. 706, 77 L.Ed. 1405] [Commissioner of Internal Revenue and Collector of Internal Revenue]; *United States* v. *Willard Tablet Co.* (7th Cir. 1944) 141 F.2d 141 [152 A.L.R. 1194] [Federal Trade Commission and Food and Drug Administration]; *George H. Lee Co.* v. *Federal Trade Com.* (8th Cir. 1940) 113 F.2d 583 [same]; *People* v. *Holladay* (1892) 93 Cal. 241, 249-251 [29 P. 54, 27 Am.St.Rep. 186] [municipal corporation and state attorney general]; *People* v. *Smith* (1892) 93 Cal. 490 [29 P. 57, 247] [same]; cf. *Price* v. *Sixth District Agricultural Assn.* (1927) 201 Cal. 502 [258 P. 387] [county and taxpayer]; *County of Butte* v. *Waters* (1942) 56 Cal.App.2d 185 [132 P.2d 517] [same]; but cf. *Marshall* v. *Crotty* (1st Cir. 1950) 185 F.2d 622 [declaratory judgment against local officials of Civil Service Commission and Veterans Administration would not bind national boards].

*Board of Education* v. *Martin* (1891) 92 Cal. 209 [28 P. 799], held that a judgment against the City and County of San Francisco was not res judicata against the San Francisco School Board. While the case is sometimes cited as holding the two governmental bodies not in privity, it turned on the fact that by state law the sole right to defend actions involving possession of school property was vested in the school board. The judgment against the city was held not binding on the school board since in undertaking to defend the suit on its merits the city exceeded its authority.

dential and its consequent legal obligation to discharge Lerner. In this case the requisite identity in legal right binds together both the state and city boards; the waiver of the state board, and the estoppel against the state board thus extend to the city board. We conclude that the waiver and estoppel thus prevent the city board from successfully asserting that the statute of limitations began to run against Lerner in December 1954.

We turn to the final issue of the case. The city board maintains, and the trial court found, that Lerner's cause of action was barred by laches. The finding of laches, however, rests upon the assumption that the cause of action arose in December of 1954. Since we have held that the cause arose in July 1958, we believe that as a matter of law laches do not bar Lerner's action.

The total delay, from July 1958 to the filing of suit, involved about six months; only rarely have the courts applied the doctrine of laches to so short a time. (See *Wolstenholme* v. *City of Oakland* (1960) 54 Cal.2d 48 [4 Cal.Rptr. 153, 351 P.2d 321] and cases cited *id.* at p. 51; see also *id.* at p. 53 [Gibson, C.J., dissenting].) Furthermore, Lerner can show justification for the greater part of the delay.

We find no laches in Lerner's failure to bring suit immediately upon notice of the city board's rejection of his request for reinstatement. About three days after that date the state board filed charges against him. The board held its hearing on December 4; Lerner filed suit December 10. His failure to bring an action during the pendency of the hearing is not unreasonable. (Cf. *Lee C. Hess Co.* v. *City of Susanville* (1959) 176 Cal.App.2d 594 [1 Cal.Rptr. 586].) If the state board had decided against him the city board could not have reinstated him; if the state board had found in his favor he might reasonably have expected that the city board would acquiesce in the finding.

Finally, the city board's attempt to show prejudice resulting from the delay in filing the action erroneously assumes, likewise, that the cause in the present case arose in 1954. Moreover, as to the delay caused by filing in December rather than July 1958, the record shows no prejudice to the city board.

In conclusion, we do not believe that in a society in which the individual so often finds himself dependent upon the ac-

tion of administrative tribunals he should automatically suffer the loss of the right to pursue his profession by reason of time consumed by the administrative process itself in perfecting and enforcing his rights. In the unique sequence of this case the superior state administrative body corrected its error only after the lapse of the statutory period. To permit the inferior city body to lay hold of the delay to save its cancellation of the teaching credential, which would otherwise not suffer automatic severance, is to impose a harsh result. We have found no case in the books which sanctions it. We see no reason in principle to compel it, particularly since the city board may test Lerner's moral fitness to teach under appropriate statutory procedures which afford to him the protection of a hearing.

The judgment of the Superior Court of Los Angeles County is reversed, and the case remanded for further proceedings consistent with this opinion.

Gibson, C. J., Traynor, J., Peters, J., and White, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment of the Superior Court of Los Angeles County, rendered by Judge Wheatcroft, in favor of defendants in this action brought by plaintiff to be reinstated in his position as a school teacher in the Los Angeles School District.

Plaintiff pleaded guilty in the Municipal Court of the Los Angeles Judicial District (*People* v. *Lerner,* No. 67703) to a charge of being a lewd vagrant, in violation of section 647, subdivision 5, of the Penal Code.

It was stipulated in the present case that paragraph IV of the state board's accusation against plaintiff read: ". . . That on or about July 10, 1948, in the City and County of Los Angeles, State of California, the respondent committed one or more base, vile, lewd and lascivious acts in that he did then and there rub, touch and fondle the private parts of R. A. Cook, a person of the masculine sex, in a manner designed to arouse, excite and gratify unnatural sexual desires in R. A. Cook and the respondent; and, that the respondent did then and there further offer and attempt to then and there orally copulate the penis of R. A. Cook."

---

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.

It was further stipulated that the proposed decision of the hearing officer adopted by the state board found that the foregoing accusation was not true.

It was also stipulated the the decision adopted by the state board made the following findings of fact:

"V

"It is true that on or about April 28, 1949, respondent filed a verified application for a renewal of his General Secondary School Credential with the Commission of Credentials and that Question 11(f) in said application read as follows:

" 'Have you ever been convicted of a misdeameanor or a felony other than minor traffic offenses.'

"It is also true that respondent gave a negative answer to said question and that the State Board of Education relied on said answer when it issued to respondent the credential applied for. Although respondent knew at the time that he gave said negative answer that he had suffered the conviction referred to in Finding IV, it is not true that he intended to deceive the Board in so answering said question, as he honestly believed what his attorney had told him, 'that the dismissal of his case prior to the filing of said application cancelled and erased said conviction for all purposes.'

"VI

"On or about June 4, 1954 respondent filed a verified application with the Commission of Credentials of the State of California for a Life Diploma. Question 12(f) in said application read as follows:

" 'Have you ever been convicted of a felony or of a misdemeanor other than minor traffic offenses.'

"Underneath said question appeared in smaller type, the following instructions:

" ('You should answer this question with the word 'Yes' if in any proceedings, other than for violation of a minor traffic offense, (1) you have entered a plea of guilty, or (2) a verdict of guilty was returned against you by a jury, or (3) you were found guilty by a court in a trial without a jury, regardless of any subsequent dismissal of the accusations or information against you under Penal Code Section 1203.4 unless the conviction was reversed and thereafter you were acquitted in a new trial or the charges were dismissed.')

"Respondent gave a negative answer to said question 12(f) whereas he should have given an affirmative one in view of the

aforesaid instructions, even though the case referred to in Finding IV had been dismissed pursuant to Section 1203.4 prior to the filing of said application. The Commission of Credentials relied upon the information contained in said application in issuing the Life Diploma to respondent which he applied for.''

It thus appears that plaintiff not alone was guilty of lewd and lascivious conduct but on two occasions gave an untrue answer to questions.

The State Board of Education revoked his credentials on December 10, 1954. On July 2, 1958, the state board reinstated his teaching credentials.

On July 24, 1958, plaintiff requested the city board to reinstate him in his position. On August 21, 1958, the city board denied his request.

About the same time, the state served on plaintiff an accusation in which it sought to revoke his teaching credential on the ground that he had engaged in immoral conduct on July 10, 1948, and was convicted on July 15, 1948, of an offense involving moral turpitude, and concealment of such conviction with intent to deceive and defraud in applying for renewal of his teaching certificate in 1949 and 1954.

On December 4, 1958, an administrative hearing on the accusation was held, and the matter was submitted. Prior to the state board's decision in the present administrative proceeding, plaintiff commenced the present court action on December 10, 1958.

On March 5, 1959, the administrative hearing officer submitted his proposed decision that the accusation be dismissed, and it was dismissed. Plaintiff notified the city board of the action of the state board and renewed his request that he be reinstated in his position.

On May 13, 1959, the city board wrote plaintiff in connection with his request for reemployment. The letter stated that the findings of the state hearing officer were ''not sufficiently explicit'' to enable the city board to ''resolve all doubts as to the non-existence of the events'' which led to his conviction, and further stated, ''. . . it is our conclusion that you should not be reemployed by the Los Angeles City School District.''

The trial court predicated its judgment in favor of defendants on laches and the fact that the statute of limitations had run. Plaintiff's employment by the city was terminated about December 14, 1954. His cause of action for reinstate-

ment arose at that time, and no sufficient reason for failing to file the action within a reasonable time after the accrual of the cause of action has been shown. Thus, his failure to file his action for reinstatement for nearly four years was not justified and was prejudicial to defendants. The trial court, therefore, held that plaintiff's cause of action was barred (1) by section 338, subdivision 1, of the Code of Civil Procedure and (2) by laches, and entered judgment for defendants.

In my view, plaintiff has not shown that as a matter of law the trial court's judgment is untenable or that he has otherwise established a miscarriage of justice which would require or justify this court in compelling the school board to return him to the classroom as an instructor and example for students. Manifestly, plaintiff must concede that the facts of the offense to which he pleaded guilty are precisely as alleged or that defendants have been prejudiced by the delay in instituting the action. The police officer who arrested plaintiff died before the matter came before the Los Angeles City Board of Education. It is thus evident that it has been prejudiced by the plaintiff's laches and delay in filing suit until after the officer's death.

The District Court of Appeal properly pointed out: ''On May 13, 1959, the city board sent a letter to plaintiff, indicating therein that the board considered his request to be for reemployment. The letter also stated that the findings of the hearing officer were not sufficiently explicit to enable the city board to resolve all doubts as to the nonexistence of the events which led to the conviction, 'particularly in view of the fact that the most important testimony—that of the arresting officer who is now deceased—was not available at' the hearing. The latter stated further 'it is our conclusion that you should not be reemployed by the Los Angeles City School District.' '' ( (Cal.App.) 20 Cal.Rptr. 59, 61-62.)

The reasons above stated, as well as the grounds more fully expressed in the opinion prepared by Mr. Presiding Justice Wood for the District Court of Appeal, and concurred in by Justices Fourt and Lillie, support my conclusion.

Schauer, J., concurred.